# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE | ) |
| | ) Case No.-11-01135-JDP |
| ALLEN L. WISDOM, | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ALLEN L. WISDOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No.13-06045-TLM |
| | ) |
| JEREMY GUGINO, FRANCIS R. | ) |
| STERN, ANTHONY M. PANTERA, | ) |
| IV, NEW YORK LIFE INSURANCE | ) |
| CO., DOES I TO V, DOE SURETY | ) |
| CO. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| for use and benefit of, Allen L. | ) |
| Wisdom, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DOE SURETY COMPANY, | ) |
| unknown surety bond issued to | ) |
| Jeremy J. Gugino, Trustee, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF DECISION - 1

## MEMORANDUM OF DECISION
## ON PLAINTIFF'S MOTION FOR RECUSAL
_____

At a status conference held March 24, 2014, the *pro se* plaintiff in this adversary proceeding, Allen Wisdom ("Plaintiff"), raised the issue of my recusal based on the fact that a defendant, chapter 7 trustee, Jeremy Gugino ("Trustee"), was previously employed as my law clerk.[1] Plaintiff was given until April 14 to brief that issue, but the Court extended that time until April 30 at Plaintiff's request, with opposition briefing from Trustee due a week thereafter. *See* Adv. Doc. No. 31. Those briefs have been filed and reviewed, *see* Doc. Nos. 39, 41, 42 and 51, and the matter is at issue.[2]

**BACKGROUND AND FACTS**

    **A.**    **Procedural history**[3]

Plaintiff commenced a voluntary chapter 7 case, No. 11-01135-JDP, in

---

[1] As a traditional matter of style, this District's decisions refer to the presiding Judge as "the Court." As was the case in an earlier decision in this litigation, Adv. Doc. No. 31, which quashed a subpoena Plaintiff caused to be issued and served on me, I will use personal pronouns at times.

[2] The Court allowed an initial brief from Plaintiff and a responsive brief from Trustee. Plaintiff's brief asserts he has a "due process" right to file a reply brief. Adv. Doc. No. 39 at 12. He is in error; it is a matter of the Court's discretion, and none was authorized. However, Plaintiff's reply brief, Adv. Doc. No. 51, was filed and has been considered.

[3] The Court takes judicial notice of the files and records in this adversary proceeding, and in the underlying chapter 7 case, in order to outline the background and context of matters. Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

April 2011.[4]  The Hon. Jim D. Pappas was and remains the presiding judge in that bankruptcy case.

On December 3, 2013, Plaintiff filed the complaint commencing the instant adversary proceeding.  Adv. Doc. No. 1.  Plaintiff sued Trustee and several other defendants, raising multiple claims and causes of action.

In an order entered following a hearing on February 5, 2014, Judge Pappas recused himself from presiding over the adversary proceeding and it was assigned to me.

### B. Trustee's relationship with the Court

Trustee was employed from January 4, 2006, through August 10, 2007, as a term law clerk in my chambers.  After leaving the Court's employ, he was placed on the panel of private trustees maintained by the Office of the United States Trustee in the District of Idaho.  *See generally* 28 U.S.C. § 586(a)(1), (d)(1).  He thereafter was randomly appointed by the Office of the United States Trustee to chapter 7 cases in the southwestern portion of the District.  *See* § 701, 702(d).

Since late 2007, Trustee has regularly appeared in front of me and Judge Pappas.  His role before the Court has been solely as a trustee in cases that were commenced by petition filings occurring after he left the Court's employ.[5]

---

[4] Unless indicated otherwise, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and all rule citations are to the Federal Rules of Bankruptcy Procedure.

[5] When federal law clerks enter the practice of law as private or government attorneys,
(continued...)

MEMORANDUM OF DECISION - 3

Trustee's relationship with the Court, and me in particular, is professional in nature. He is one of several chapter 7 trustees who regularly appear before the Court. Trustee has no personal or social relationship with me. I do not see Trustee outside of the courtroom, save the occasional chance meeting[6] or discussion at a bankruptcy seminar or conference.[7]

## DISCUSSION AND DISPOSITION

Plaintiff's motion and initial argument make clear the primary issue presented. He argues that the fact that Trustee was once a law clerk in the Bankruptcy Court for the District of Idaho creates a "conflict of interest" that is both "obvious" and "insurmountable" and prohibits any judge in this District, and most particularly me, from sitting on this case.[8]

---

[5](...continued)
an issue can exist as to whether such individuals should appear in or work on cases that were pending on the date their clerkship ended even if they were not involved with those cases as a law clerk. The situation here is markedly different. Given a trustee's role in the bankruptcy process, cases assigned to Trustee *all* arose after he finished his clerkship.

[6] I recall running into Trustee on various occasions in Boise where we both reside. To my recollection, these include grocery stores, a furniture store, and once while running for exercise. Each encounter was brief and cordial. I estimate maybe a dozen such encounters have occurred over the years.

[7] The Commercial Law and Bankruptcy Section of the Idaho State Bar sponsors an annual seminar which the Judges regularly attend. Trustee has appeared as a speaker or otherwise attended these meetings only infrequently. Although legal issues are the mainstay of such conferences, Trustee and I never discussed pending cases, consistent with the approach I take with all lawyers attending such meetings.

[8] Plaintiff's brief, Adv. Doc. No. 39, also raises some issues regarding whether Trustee was qualified for inclusion on the panel of chapter 7 trustees or had requisite authority to act as trustee. Recognizing that Plaintiff has raised numerous allegations about Trustee, the Court will address these contentions only to the extent they relate to any argument that recusal is required,
(continued...)

MEMORANDUM OF DECISION - 4

A.   **Authorities and principles governing recusal**

Two provisions of the U.S. Code address the subject of judicial recusal, 28 U.S.C. § 144 and 28 U.S.C. § 455. But only 28 U.S.C. § 455 applies when analyzing a motion to recuse in bankruptcy cases and proceedings. *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (9th Cir. BAP 1996). *See also* Rule 5004(a). Section 455 states in relevant part:

> (a)   Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b)   He shall also disqualify himself in the following circumstances:
>    (1)   Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455(a), (b)(1).

As the Ninth Circuit has explained, a motion to recuse "is addressed to, and must be decided by, the very judge whose impartiality is being questioned." *Bernard v. Coyne (In re Bernard)*, 31 F.3d 842, 843 (9th Cir. 1994). *See also United States v. Sibla,* 624 F.2d 864, 867–68 (9th Cir. 1980); *United States v. Balistrieri,* 779 F.2d 1191, 1202–03 (7th Cir. 1985) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge.").

Thus, I must address two issues. First, I must determine whether my

---

[8](...continued)
and will not otherwise comment.

MEMORANDUM OF DECISION - 5

impartiality might reasonably be questioned and, second, whether I have an actual "personal bias" regarding Trustee under 28 U.S.C. § 455(b)(1).

### 1. Impartiality

The standard for whether a judge must recuse himself under 28 U.S.C. § 455(a) asks "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 933 (9th Cir. BAP 1997), *aff'd* 152 F.3d 924 (9th Cir.1988) (quoting *Goodwin*, 194 B.R. at 222) (internal quotation marks omitted). *See also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *Berry v. United States Trustee (In re Sustaita)*, 438 B.R. 198, 213–14 (9th Cir. BAP 2010); *Lebbos v. Schuette (In re Lebbos)*, 2007 WL 7540977, *6 (9th Cir. BAP Nov. 14, 2007). As stated in *Bernard*: "Section 455 requires not only that a judge be subjectively confident of his ability to be evenhanded, but also that an informed, rational, objective observer would not doubt his impartiality." *Bernard*, 31 F.3d at 844 (citing *United States v. Winston*, 613 F.2d 221, 222 (9th Cir. 1980)). *See also United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) (holding the hypothetical reasonable person falls somewhere between that of a judge and a person who is "unduly suspicious or concerned about a trivial risk that a judge may be biased"); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) (stating the test is whether "a reasonable man knowing all the circumstances would harbor doubts concerning the judge's

MEMORANDUM OF DECISION - 6

impartiality").

In evaluating a motion under 28 U.S.C. § 455, "the judge to whom a recusal motion is addressed is presumed to be impartial . . . and there is substantial burden on the moving party to show that the judge is not impartial . . . ." *In re Jones*, 2002 WL 818275 (Bankr. D. Idaho 2002) (quoting *In re Melendez*, 224 B.R. 252, 277 (Bankr. D. Mass. 1998)) (internal quotation marks omitted). *See also Lebbos*, 2007 WL 7540977 at *6 (citing *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000)) ("We start with a presumption that the bankruptcy judge is impartial."); *Sustaita*, 438 B.R. at 213 (same).

The presence of a prior personal or professional connection between a judge and a lawyer or litigant often forms the basis of a motion for recusal. But the case law reveals such a relationship seldom requires recusal. For example, in *Subramanian v. St. Paul Fire & Marine Ins.*, 494 Fed. Appx. 817 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1727, 185 L. Ed. 2d 787 (2013), the Ninth Circuit panel rejected appellant's arguments for recusal. In the district court below, the judge had denied a request for recusal based on the fact his former law clerk was hired as a lawyer in the firm representing one of the parties, stating: "[The law clerk's] employment does not create any financial conflicts of interests or personal biases or prejudices for the undersigned, she is not a relative of the undersigned, nor was she 'serv[ing] as a lawyer concerning [this] matter' during a time when she may

MEMORANDUM OF DECISION - 7

have 'practiced law' with the undersigned." *Vedatech, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2008 WL 2790200, *6 (N.D. Cal. July 17, 2008) (second and third alterations in original). The Circuit affirmed. *Subramanian*, 494 Fed. Appx. at 821.

Similarly, in *United States v. Bosch*, 951 F.2d 1546 (9th Cir. 1991), *cert. denied*, 504 U.S. 989 (1992), the Ninth Circuit held a trial judge's failure to recuse where the prosecutor was a former law clerk was not plain error when there was no demonstration of bias, even though the judge characterized the former clerk as a "dear friend." *Id.* at 1548–49.[9]

Decisions outside the Ninth Circuit also generally do not require recusal when the presiding judge has a prior professional connection with an attorney or litigant. Several courts have determined that the presiding judge need not recuse when a former law clerk appears as an attorney in the case, even when the clerkship terminated only a short time before. *See, e.g.*, *Patzner v. Burkett*, 779 F.2d 1363 (8th Cir. 1985) (clerkship ended nine months before complaint filed and more than a year before attorney appeared in case); *United States v. Hollister*, 746 F.2d 420 (8th Cir. 1984) (clerkship ended three months earlier); *United States v. O'Brien*, 2014 WL 535663 (D. Mass. Feb. 6, 2014) (clerkship ended ten years earlier); *McGrath v. Everest Nat'l Ins. Co.*, 2009 WL 4842837 (N.D. Ind. Dec. 10,

---

[9] The judge in *Bosch* also made other comments suggesting an affection and close affinity to the lawyer, even to the extent that he at times viewed the lawyer like a son. Those comments generated a dissent from the panel's decision.

MEMORANDUM OF DECISION - 8

2009) (2–year clerkship ended eight years earlier); *In re Cooke*, 160 B.R. 701 (Bankr. D. Conn. 1993) (1–year clerkship ended one month before case was filed).

Although the case law is instructive, at the end of the day, 28 U.S.C. § 455(a) places the burden squarely on me to evaluate partiality and impartiality.

Here, the asserted question of impartiality rests on the existence of a connection with Trustee due to his past employment.  The connection is simply too dated and too tenuous to hold the weight Plaintiff suggests when that connection is viewed from the required rational and objective perspective. Trustee's clerkship ended nearly seven years ago.  I currently have no social contact with Trustee, and my professional relationship with him is generally limited to his appearances in Court, with the limited exceptions described in the footnotes above.

Over the nearly seven years that Trustee has been in practice, he has appeared hundreds of times at hearings on motions and contested matters and at trials.  He has been—and will continue to be—held to the same rules of procedure, the same rules of evidence, and the same professional standards as are others.  His cases have been decided based on controlling statutes and case law, the quality of his pleadings, advocacy and arguments, and the facts he proves.

While capable, Trustee is not infallible and does not enjoy unblemished success.  As I specifically mentioned to Plaintiff and the other litigants at hearing on March 24, Trustee has amassed a fairly good "batting average."  However, that

MEMORANDUM OF DECISION - 9

relative success is based solely on the evidence and applicable law in a given case. Trustee enjoys no special position, treatment, or concession from me. There is no favoritism, bias, or impartiality. This is evidenced, among other things, by the fact that Trustee has also been unsuccessful in litigation before this Court.[10]

I have ruled in favor of Trustee. I have ruled against him. Even Plaintiff must recognize that Trustee is not immune from searching scrutiny because Plaintiff cites in his brief the case of *R. Woolsey & Assocs., Inc. v. Gugino (In re R. Woolsey & Assocs., Inc.)*, 454 B.R. 782 (Bankr D. Idaho 2011), where Trustee's conduct was subject to detailed analysis by the Court.

All of this establishes that, like most term law clerks who enter practice, Trustee may enjoy a benefit of having learned more about the law and practice in the federal court than those who did not have the opportunity to serve as a law clerk. But merely because he has had that experience and possible benefit does not suggest a credible basis for judicial recusal.[11]

It is a fact of legal life that former law clerks, and former law firm partners, and lawyers with whom a judge has cordial and even friendly relationships, may

---

[10] As Trustee's counsel states in briefing, "The Court has ruled against Mr. Gugino often enough to place its impartiality beyond reasonable question." Adv. Doc. No. 42 at 6 n.1.

[11] It has often been observed that the situation is more likely to the contrary—a former law clerk is often held to a higher standard. That is because whatever benefits in experience, training or insight the law clerk gains are outweighed by an expectation that, when he later appears in front of his former judge, he should perform better or more competently because of such prior experience. *Accord*, *U.S. v. Bosch*, 951 F.2d at 1549 (noting that the trial court had stated on the record that the former law clerk, now prosecutor, "never had any special consideration from me. As a matter of fact, it was quite the opposite").

MEMORANDUM OF DECISION - 10

appear in front of that judge. Their success must be based on the evidence and the law, not on relationships.

A reasonable, objective person would not perceive me to be partial because the distance (both temporal and personal) that now exists from my previous employment relationship with Trustee, and because of the way Trustee has been treated when appearing before me for the last several years. I firmly believe and conclude that, using the standard applicable to 28 U.S.C. § 455(a), the rational, reasonable and objective person would reach the conclusion that I am impartial.

### 2.    Bias

The standard for analyzing whether a judge has an actual bias under 28 U.S.C. § 455(b)(1) is whether the judge has displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1220 (9th Cir. 2014).

Many of the foregoing cases distinguish only modestly if at all between the objective impartiality standard of 28 U.S.C. § 455(a) and the bias analysis under 28 U.S.C. § 455(b). But one important distinction is that I am required to evaluate all matters known to me, and to recuse if I personally conclude I have bias. The test is not one of the objective viewer's perspective, or of the movant's suspicions; rather it is one of the judge's knowledge of actual bias. *See*, *e.g.*, *Syntax-Brillian Corp.*, 400 B.R. 21, 26 (Bankr. D. Del. 2009) (noting that 28 U.S.C. § 455(b)

MEMORANDUM OF DECISION - 11

requires the judge "to disqualify himself or herself on account of an actual (as opposed to perceived) bias or conflict").

The judge is obligated to recuse if he or she feels that judicial duties cannot be performed fairly and impartially. But, concomitantly, there is a duty not to recuse if the circumstances do not warrant.[12]

As to Trustee, I readily and unequivocally conclude that I do not have a "deep-seated favoritism . . . that would make fair judgment impossible." Despite the undisputed fact of Trustee's prior employment by me in 2006 and 2007, I have no hesitation whatsoever in determining I am impartial when it comes to Trustee's appearance in litigation before me. I have applied the same standards to the litigation that Trustee has been involved in as I do to all other litigation. I have no bias for or against Trustee.

The issues under 28 U.S.C. § 455 addressed so far all deal with Trustee. Solely for completeness, I will also observe that—as to Plaintiff—I likewise do not lack the required impartiality or have any bias. I have only relatively recently been assigned this adversary proceeding. I have no prior knowledge of Plaintiff

---

[12] Case law has developed this countervailing policy to recusal: "While the judge must be mindful of the objective test under 28 U.S.C. § 455(a), she or he must also consider the policy that '[A] judge once having drawn a case should not recuse himself on a unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *Melendez*, 224 B.R. at 277 (quoting *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)); *see also McGrath*, 2009 WL 4842837 at *6. This Court has previously acknowledged the policy. *See Jones*, 2002 WL 818275 at *5 and n.4 (citing *State of Idaho v. Freeman*, 507 F. Supp. 706 (D. Idaho 1981)).

MEMORANDUM OF DECISION - 12

nor interaction of any kind with him. And the fact that Plaintiff has pursued this motion and the related subpoena creates no "deep seated . . . antagonism that would make fair judgment impossible" or any bias. Plaintiff was entitled to raise the issue, and I was required to address it. *Accord Bernard*, 31 F.3d at 846–47 (noting that a motion to disqualify does not necessarily impugn the integrity of the judge whose impartiality is being questioned, because it has subjective and objective components, including the evaluation of appearances to the informed, objective viewer).

There is no bias or other reason under 28 U.S.C. § 455(b) for recusal.

### 3.    Additional issues

Plaintiff's briefing indicates other "issues," not raised at the prior hearing, that he believes require recusal. For example, he asserts Trustee was never qualified for inclusion on the standing panel. Adv. Doc. No. 39 at 10–11. This is based on his reading of 28 C.F.R. 58.1(c), a regulation providing that the United States Trustee shall not appoint as a standing trustee "[a] relative of a bankruptcy judge *or a clerk of* the bankruptcy court in the region in which the standing trustee is to be appointed." (emphasis added).

First of all, the UST, not the Court, makes appointments to the panel, and has done so since 1997. Whether or not Plaintiff perceives an issue with the propriety of the *UST's* process or decision to appoint does not implicate recusal issues for me. Secondly, Plaintiff appears to misread the regulation.

MEMORANDUM OF DECISION - 13

Grammatically parsed, the regulation prohibits the UST from appointing a relative of a bankruptcy judge in that region or a relative of a clerk of the bankruptcy court in that region. Even if not so read and instead treated as if there were a comma between the words "judge" and "or" in the regulation, the prohibition would be of the appointment of "a relative of the bankruptcy judge" *or* the appointment of "a clerk of the bankruptcy court[.]" A "clerk of the bankruptcy court" is a different person and office than a law clerk for a judge. *Accord United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989) (grammatically parsing comma placement to determine the construction of a statute).

In a similar vein, Plaintiff also asserts that Trustee "has never had the authority" to act as a trustee because of his failure to have his bond filed with the Court, citing § 322(a). While this issue might relate to Plaintiff's several pleaded (or signaled) contentions regarding Trustee's conduct and liability, the recusal aspect is premised on the argument that I "either knew of this violation of the Bankruptcy Code or should have known of it." Adv. Doc. No. 39 at 6–9.

As with the issue of the regulation just discussed, these contentions also have nothing whatsoever to do with my ability to evaluate the facts and the law and render an impartial and fair judgment on the parties' contentions. Whatever bearing these questions about filing of a bond might have on the underlying claims asserted in the litigation (a point on which I express no opinion today), they are

MEMORANDUM OF DECISION - 14

irrelevant to any suggestion of recusal.[13]

I conclude that the foregoing arguments, even if not flawed for other reasons, have no bearing on the suggestion of my recusal.

Finally, and for completeness, I address Plaintiff's arguments that he was "denied" discovery needed to make out his case for recusal. As noted, I issued a prior decision quashing a subpoena issued on me, finding it improper. *See* Adv. Doc. No. 31. In addition to the authorities there cited, I note that in *Goodwin*—a case referenced in Plaintiff's own briefing—the BAP affirmed the bankruptcy judge's quashing of subpoenas issued by the appellants in an attempt to conduct discovery on recusal issues.

In that case, the bankruptcy judge reasoned, and I believe correctly, that a motion for recusal was not a contested matter under Rule 9014 and, therefore, discovery was not available. The BAP concluded that it did not need to reach this argument because, even assuming the proceeding was a contested matter, the court still properly refused to permit discovery. The BAP there held that a "motion to recuse is not a mere pleading, a first step towards a possible case. Like any public official, a judge is presumed to be qualified to act, and an objector must come with a prima facie case, not just the hope of developing one." 194 B.R. at 226 (quoting *Ricci v. Key Bancshares of Maine, Inc.*, 111 F.R.D. 369, 373 n.4 (D. Me. 1986))

---

[13] I also reject the concept advanced by Plaintiff that the issues surrounding Trustee's appointment by the UST or his obtaining, holding or filing a bond necessarily make me a "material witness" in the litigation.

MEMORANDUM OF DECISION - 15

(internal quotation marks omitted).  The BAP held that the appellants in *Goodwin* "failed to show even a reasonable suspicion that the judge was biased or prejudiced.  In the absence of such a showing, the Appellants were simply engaging in a fishing expedition. . . .  The bankruptcy court properly denied discovery." *Id*.

**CONCLUSION**

There is no basis or reason for recusal.  The issues raised by Plaintiff do not indicate that my impartiality may reasonably be questioned when weighed by an objective and reasonable person with knowledge of the facts.  And my independent and careful evaluation of the entire situation confirms my belief that I am free from bias, and I can be fair and objective in addressing the merits of the controversies before me.  Plaintiff's motion and request will be denied in all regards.  An appropriate order will be entered.

DATED:  May 23, 2014

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 16