# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE )<br><br>ALLEN L. WISDOM, )<br><br>Debtor. )<br>_____ )<br><br>ALLEN L. WISDOM, )<br><br>Plaintiff, )<br><br>v. )<br><br>JEREMY GUGINO, FRANCIS R. )<br>STERN, ANTHONY M. PANTERA, )<br>IV, NEW YORK LIFE INSURANCE )<br>CO., TERRY MICHAELSON, )<br>HAMILTON, MICHAELSON, )<br>& HILTY, LLP, KAREN )<br>MCMURTRIE, )<br><br>Defendants. )<br>_____ ) | Case No. 11-01135-JDP<br><br>Chapter 7<br><br><br><br><br>Adv. No. 13-06045-TLM |

## MEMORANDUM OF DECISION
_____

Before the Court is a "Renewed Motion for Judgment on the Pleadings,"

Adv. Doc. No. 94 (the "Motion"), filed by defendant New York Life Insurance

Co. ("NY Life").[1]  Plaintiff Allen Wisdom ("Wisdom") filed an objection and

_____

[1] NY Life filed a prior motion for judgment on the pleadings that was denied because the
(continued...)

MEMORANDUM OF DECISION - 1

response, and the matter was taken under advisement after argument.

**FACTS**

### A.    The record

The Motion is based on Civil Rule 12(c), applicable herein under

Bankruptcy Rule 7012(a).[2]  In general, the authorities applicable to Civil Rule

12(c) limit the Court's analysis to the relevant pleadings of record.  Here, those are

Wisdom's First Amended Complaint, Adv. Doc. No. 78 (the "FAC") and NY

Life's answer, Adv. Doc. No. 82 (the "Answer").  In addition, the parties ask the

Court to take judicial notice of its files and records in Debtor's chapter 7 case,

Case No. 11-01135-JDP, and in the District Court's case, No. 12-CV-00530-

BLW, on Debtor's unsuccessful appeal from a prior ruling.  The Court also

independently concludes that, in order to provide context and address necessarily

related issues, such judicial notice is required.  The documents are matters of

public record and not subject to reasonable dispute within the sense of Fed. R.

Evid. 201, even if the parties disagree as to their legal import.  These requests are

granted.[3]

---

[1] (...continued)
pleadings were not then closed.  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed . . . .").

[2]  The Court refers to the Federal Rules of Bankruptcy Procedure as the "Bankruptcy Rules" and to the Federal Rules of Civil Procedure as the "Civil Rules."  Additionally, unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101-1532.

[3]  Civil Rule 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside
(continued...)

### 1.    The bankruptcy case

Wisdom filed for chapter 7 relief on April 19, 2011, commencing Case No.

11-01135-JDP.  He was represented in the bankruptcy by attorneys (and now also

defendants) Francis Stern and Anthony Pantera IV.[4]  The chapter 7 trustee is

Jeremy Gugino ("Trustee").

On May 18, 2011, Wisdom amended his Schedules B and C.  Doc. No. 19.

The amendments to schedule B disclosed Wisdom's interest in five different

insurance policies with NY Life, with the following cash values: policy no. 306[5]

($1,511.00); policy no. 754 ($943.00); policy no. 860 ($3,238.00); policy no. 504

($4,055.00); and policy no. 344 ($62,037.00).  Wisdom's amendments to schedule

C claimed each of the first four policies as exempt to their full alleged values

under Idaho Code § 11-605(10), and claimed $5,000 as exempt in policy no. 344,

also pursuant to Idaho Code § 11-605(10).[6]

---

[3](...continued)
the pleadings are presented to and not excluded by the court, the motion must be treated as one
for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to
present all the material that is pertinent to the motion."  The Court, in considering the written and
oral arguments, finds that the parties have had the opportunity to present what they desire in
support of their respective positions, and neither argued for more time or opportunity to present
anything else.  The Court deems Civil Rule 12(d) satisfied.

[4]  Stern and Pantera were Wisdom's counsel from the date of filing through entry of an
order allowing their withdrawal on December 7, 2011.

[5]  The policy numbers are eight digits in length.  When previously referred to by parties
and the Court, the numbers were generally redacted to their final three digits.  The Court
continues this practice.

[6]  Idaho has opted out of the Code's federal exemptions.  *See* § 522(b)(2); Idaho Code
(continued...)

MEMORANDUM OF DECISION - 3

Trustee objected to Wisdom's amended exemptions, contending that Idaho Code § 11-605(10) allows one exemption, capped at a total of $5,000.00, as to all the policies. Trustee therefore specifically objected to the exemptions claimed in the first four policies, since $5,000 had been claimed by Wisdom in policy no. 344 under that section. Doc. No. 23.

While the record reflects Wisdom was served with this objection, Wisdom did not oppose or otherwise respond to it. On June 29, 2011, the Court entered an Order sustaining Trustee's objection. Doc. No. 28. The exemptions asserted in the four smaller policies were thus disallowed. *Id.* Wisdom's $5,000 exemption claimed in policy no. 344 was not challenged or affected.

Trustee continued to administer the estate and one year later filed Trustee's Final Report and Application for Compensation, Doc. No. 144 (the "TFR") on June 5, 2012.[7] The TFR reflects that NY Life initially liquidated one policy and provided the Trustee with a check for $67,152.64 representing its proceeds. *Id.* at 5.[8] Trustee then sent a $5,000 check to Wisdom for his allowed exemption under

---

[6] (...continued)
§ 11-609.

[7] The docket reflects a lot of activity during this year, including disputes over Trustee's compromising certain litigation and the withdrawal of Wisdom's attorneys. These events provide context for some of the contentions presented in the adversary proceeding, though not the issues with NY Life, and therefore are not detailed here.

[8] Given the values of the five policies, this was necessarily the liquidation of policy no. 344.

MEMORANDUM OF DECISION - 4

Idaho Code § 11-605(10).  *Id.* at 6.[9]  After the Court's June 2011 Order

disallowing claims of exemption, NY Life then liquidated the remaining policies

and provided the funds to Trustee.  *Id.*

On June 27, 2012, Wisdom filed an objection to the TFR entitled

"Objection to Trustee's Inclusion of Non-estate Assets and Funds Obtained by

Fraud in TFR."  *See* Doc. No. 150 ("TFR Objection").  The TFR Objection

included Wisdom's affidavit, *id*. at 14–15, along with copies of several letters and

their attachments.  According to the affidavit, Wisdom "first became aware" of

Trustee's demand for liquidation of the policies on June 13, 2011, after receiving a

June 7, 2011 letter from NY Life enclosing a copy of Trustee's letter to it asking

that policy no. 344 be liquidated and the other four policies be "frozen."  In

September 2011, Wisdom learned from copies of additional letters that the other

four policies were being surrendered.

In the TFR Objection, filed a year after Wisdom "first learned" of Trustee's

efforts to liquidate policy no. 344 and nine months after learning of the liquidation

of the other policies, Wisdom made the following assertions:

—that Trustee violated Wisdom's rights when he "unilaterally" decided

Wisdom would claim the $5,000 exemption on policy no. 344, and that this act

was an "intentional misrepresentation" by Trustee;

---

[9]  The Court later learned that, consistent with the TFR, Wisdom received and negotiated that check.

MEMORANDUM OF DECISION - 5

—that in contacting NY Life shortly after the § 341(a) meeting regarding liquidation of policy no. 344, Trustee demonstrated his intent to defraud;

—that Trustee had a duty to disclose to NY Life that Wisdom had claimed the policies as exempt, and intentionally failed to do so, constituting fraud by silence;

—that Trustee's order to NY Life to liquidate policy no. 344 was without authority and thus violated Trustee's fiduciary duty to Wisdom and constituted fraud;

—that, after the Court's ruling sustaining Trustee's objection to exemption in the four smaller policies, Trustee's communication to NY Life that these policies were not exempt and were to be liquidated was a false and intentional misrepresentation, deceptive, and reflected Trustee's intent to commit a fraud on Debtor and on NY Life.

In the TFR Objection, and a later "reply" filing, Doc. No. 154, Wisdom argued that Idaho Code § 11-605(9) provided an exemption for all the policies.[10] This, Wisdom contended, made Trustee's representations to NY Life that the policies were not exempt knowingly and intentionally fraudulent.

Wisdom asked for return of the proceeds of the policies (net of the $5,000

---

[10]  Wisdom's schedule C referenced only Idaho Code § 11-605(10).  He asserted for the first time in the TFR Objection the argument of implied exemption and in later briefing contended that "it is not necessary to identify I.C. § 11-605(9) as an exemption when I.C. § 11-605(10) is identified as an exemption[.]"

MEMORANDUM OF DECISION - 6

he acknowledged he already received) from estate assets and from Trustee's surety bond; for denial of any compensation to Trustee; and for reference of the matter to the U.S. Attorney and to the U.S. Trustee.

The TFR Objection was heard in July 2012 and taken under advisement. On September 11, 2012, the Court entered a Memorandum of Decision, Doc. No. 156 ("TFR Decision"), overruling Wisdom's objections and approving the TFR.[11]

The issues Wisdom raised, as characterized by the Court, were: (1) whether Trustee's decision to honor Wisdom's exemption, expressly claimed under Idaho Code § 11-605(10) on policy no. 344, was inappropriate; (2) whether a chapter 7 trustee has a duty to honor an exemption of property of the estate when the debtor fails to properly claim it; and (3) whether an express claim to an exemption in an insurance policy under Idaho Code § 11-605(10) constitutes, in addition, an implied claim of exemption under Idaho Code § 11-605(9).

The Court addressed each of these issues at length, and determined that Wisdom's objections were not well taken factually or legally. The Court found Wisdom was entitled solely to the $5,000 exemption he had expressly asserted and been duly paid. The Court found Wisdom's assertion that Trustee "unilaterally" decided the $5,000 exemption would be made on policy no. 344, and his assertions that Trustee made intentional misrepresentations, "were wrong." 478

---

[11]  The TFR Decision, entered by Bankruptcy Judge Jim D. Pappas, is also reported at *In re Wisdom*, 478 B.R. 394 (Bankr. D. Idaho 2012).

MEMORANDUM OF DECISION - 7

B.R. at 397.  It stated:

> On this record, Trustee could properly assume that the exempt
> status of Debtor's insurance policies had been resolved.  Trustee was
> therefore justified in seeking to liquidate the policies to recover the
> value of the four nonexempt policies, and to recover the excess value
> in the largest policy.  When he did so, and after having paid Debtor his
> exemption from the proceeds of policy number 344, Debtor did not
> object.  Upon receipt of the check from Trustee representing the
> amount of his exemption claimed [in] the largest insurance policy,
> Debtor cashed it.
>
> Accordingly, Trustee's "decision" to honor Debtor's $5,000
> exemption in the largest insurance policy's cash value was consistent
> with the order entered by the Court.  Because of this, Debtor's
> suggestions that Trustee's actions were "unilateral" or inappropriate are
> baseless, and most assuredly, Trustee engaged in no "intentional
> misrepresentation" or "fraud" in dealing with the estate assets.

*Id.* at 398.  The Court also found:

> As property of the estate, Trustee was under a duty to convert
> the policies to money available for distribution to Debtor's many
> creditors.  In the exercise of his discretion, he did so by surrendering
> the policies to New York Life. . . .  Upon receipt of the check from the
> insurance company, Trustee sent Debtor $5,000 to satisfy his
> exemption claim in the largest policy.  At that point, any duty Trustee
> may have owed to Debtor was properly discharged.

*Id.* at 400.

> Moreover, because Debtor's contentions that Trustee engaged in fraud,
> misrepresentation, criminal conduct, and the like, are all founded upon
> Debtor's flawed premise concerning the propriety of Trustee's actions,
> they lack merit and need not be addressed.

*Id.* at 397.

The TFR Decision and related Order were thereafter affirmed on appeal by

MEMORANDUM OF DECISION - 8

the District Court on April 18, 2013.[12]  The District Court not only affirmed the

Court's construction of Idaho's exemption statutes as applied to the facts, but also

its determination that Wisdom's contentions "that the trustee committed fraud and

violated his fiduciary duties to the debtor when he surrendered the policies . . .

lack merit."  490 B.R. at 417.  It concluded that the Trustee's representations to

NY Life that the four policies were nonexempt were not false but, rather, were

"accurate."  "The trustee did not seek to liquidate these policies until after the

bankruptcy court had sustained [Trustee's] objections.  Thus, the trustee did not

engage in any misconduct related to these policies either."  490 B.R. at 418.

Wisdom appealed the District Court's ruling to the Ninth Circuit, and that

appeal is still pending.

## 2.    The adversary proceeding

Wisdom commenced this adversary proceeding on December 3, 2013,

filing his complaint against Trustee, Wisdom's former attorneys Stern and Pantera,

NY Life, and several "Doe" defendants.  His initial complaint asserted claims of

breach of contract, breach of fiduciary duty, negligence and negligence per se,

tortious interference with contract, constructive fraud, legal malpractice,

intentional infliction of emotional distress, negligent infliction of emotional

---

[12]  Case No. 12-CV-00530-BLW, Doc. No. 13.  A copy of this decision was simultaneously lodged in the bankruptcy case docket as Doc. No. 194.  It is also reported as *In re Wisdom*, 490 B.R. 412 (D. Idaho 2013).

MEMORANDUM OF DECISION - 9

distress, slander per se, and civil conspiracy.[13]  Eventually, the FAC was filed,

adding as defendants attorney Terry Michaelson and his firm Hamilton,

Michaelson & Hilty, LLP, and an individual, Karen McMurtrie.  All named

defendants have now answered.

Wisdom's FAC makes numerous allegations applicable to "all"

defendants.[14]  Close reading, however, identifies the assertions against NY Life

presently placed at issue under the Motion.[15]  The nature of the allegations against

NY Life can be summarized as follows:

—NY Life "breached its contract" with Wisdom when it liquidated policy

no. 344, and subsequently the other four policies, because it knew or should have

known the demand to liquidate was based on Trustee's intentional

---

[13]  At a hearing in February 2014, following Trustee's appearance in the adversary
proceeding through attorney Joshua Evett, Bankruptcy Judge Pappas entered an order of recusal,
and the proceeding was reassigned.  Judge Pappas however remained the assigned and presiding
Judge in the chapter 7 case.  However, due to Trustee's appearance through Evett in response to a
"motion for turnover" filed by Wisdom, Doc. No. 199, Judge Pappas recused on that specific
matter and it, too, was reassigned.  This Court later denied the motion for turnover.  Doc. Nos.
217, 218.  Wisdom has appealed that ruling.

[14]  Wisdom contends in ¶ 12 of the FAC that each defendant is an agent, servant,
representative, and employee of each of the other defendants.  However, he also asserts liability
for specific alleged conduct of given defendants in discrete paragraphs.

[15]  Within the various counts of the FAC, the following paragraphs are specific to NY
Life:  Count I (breach of contract) ¶¶ 13, 19–24; Count II (breach of fiduciary duty) ¶¶ 26, 31–34;
Count III (negligence per se) ¶¶ 45, 49–51; Count V (constructive fraud) ¶ 61, 65–66; Count VII
(intentional infliction of emotional distress) ¶¶ 84, 86; Count VIII (negligent infliction of
emotional distress) ¶¶ 91, 93, 96–97; Count X (civil conspiracy) ¶¶ 100, 102, 105–10.  Claims are
not raised with specific reference to NY Life under Counts IV (tortious interference with
contract), VI (legal malpractice), and IX (slander per se).

MEMORANDUM OF DECISION - 10

misrepresentation or fraud,[16] or was without legal authority and not based on

bankruptcy law, and because NY Life had knowledge that the policies had special

significance to Wisdom so that liquidation would cause extreme emotional

distress.  (FAC ¶¶ 20–24)

     —NY Life had, and breached, a fiduciary duty to Wisdom to act in good

faith and fair dealing, and to "refrain from selling out [Wisdom's] best interests,"

thus causing him extensive damages.  (FAC ¶¶ 32–34)

     —NY Life had a contractual duty to act in good faith in its dealings with

Wisdom and was negligent in exercising that duty and, further, in violating that

fiduciary duty committed negligence per se.  (FAC ¶¶ 50–51)

     —NY Life for 65 years made advertising and other statements to the effect

that policyholders could have confidence in and trust NY Life, and trust it to act in

good faith and deal fairly with policyholders (etc.), and such statements were

material and false, and Wisdom justifiably relied on them, and was damaged.

(FAC ¶ 66)

     —NY Life's conduct (along with that of all other defendants), as

previously alleged, was extreme, outrageous (etc.) and intentionally caused

Wisdom severe emotional distress, and also NY Life breached its duties to

Wisdom and negligently caused severe emotional distress.  (FAC ¶¶ 89, 96)

---

[16]   However, in the FAC ¶¶ 70–71, Wisdom alleged NY Life accepted as true and justifiably relied on Trustee's false representations regarding the exemptions and liquidation of policies.

MEMORANDUM OF DECISION - 11

—NY Life, jointly and in concert with other defendants, tacitly or explicitly entered into an agreement or series of agreements to participate in unlawful acts to breach their fiduciary duties to and/or commit fraud on Wisdom, and engaged in a common scheme to inflict emotional distress on Wisdom, and through such "civil conspiracy" is liable for damages. (FAC ¶¶ 105–09).

**DISCUSSION AND DISPOSITION**

NY Life's Motion relies on Civil Rule 12(c) and, primarily, is based on the application of issue preclusion given the TFR Decision. However, the Court has identified a threshold and fundamental issue in this adversary proceeding. Upon close consideration, this issue is determined to be one that moots the Motion and the need to address issue preclusion as to NY Life, at least before this Court.

**A.    Jurisdiction**

**1.    The statutory structure**

Bankruptcy jurisdiction is complicated. Congress conferred "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" on the federal district courts. 28 U.S.C. § 1134(b). Congress allows district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy courts. 28 U.S.C. § 157(a). In Idaho, the District Court made such a referral. *See* Third Amended General Order No. 38 (D. Idaho 1995).

MEMORANDUM OF DECISION - 12

In bankruptcy, the terms "arising under" and "arising in" are "terms of art."

*Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071,

1076 (9th Cir. 1991). As explained in *Battle Ground Plaza, LLC v. Ray (In re*

*Ray)*, 624 F.3d 1124 (9th Cir. 2010):

> A matter "arises under" the Bankruptcy Code if its existence depends
> on a substantive provision of bankruptcy law, that is, if it involves a
> cause of action created or determined by a statutory provision of the
> Bankruptcy Code. *In re Harris*, 590 F.3d at 737[17]; *Eastport Assocs. v.*
> *City of L.A. (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir.
> 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.
> 1987)); *Collier on Bankruptcy* § 3.01[3][c][I].

*Id.* at 1131. *Ray* also addresses what sort of proceedings "arise in" a bankruptcy

case for jurisdictional purposes:

> A proceeding "arises in" a case under the Bankruptcy Code if
> it is an administrative matter unique to the bankruptcy process that has
> no independent existence outside of bankruptcy and could not be
> brought in another forum, but whose cause of action is not expressly
> rooted in the Bankruptcy Code. *See In re Marshall*, 600 F.3d at
> 1054–55[18]; *Collier on Bankruptcy* § 3.01[3][c][iv].

*Id.* Proceedings "arising under title 11 or arising in a case under title 11" are

"core" and, if referred, the bankruptcy court may enter final orders and judgments

subject to review under 28 U.S.C. § 158. *See* 28 U.S.C. § 157(b)(1).

In addition, a bankruptcy court "may hear a proceeding that is not a core

proceeding but that is otherwise related to a case under title 11," as provided in 28

---

[17]  *Harris v. Wittman (In re Harris)*, 590 F.3d 730 (9th Cir. 2009).

[18]  *Marshall v. Stern (In re Marshall)*, 600 F.3d 1037 (9th Cir. 2010).

MEMORANDUM OF DECISION - 13

U.S.C. § 157(c)(1).  But in doing so, unless the parties consent to the bankruptcy

court entering final orders and judgments, it must submit proposed findings of fact

and conclusions of law to the district court, and final orders and judgments are

entered by the district court after de novo review of those matters to which parties

have timely and specifically objected.  *Id*.  A proceeding is "related to" the

bankruptcy when:

> the outcome of the proceeding could conceivably have any effect on
> the estate being administered in bankruptcy. . . .  An action is related
> to bankruptcy if the outcome could alter the debtor's rights, liabilities,
> options, or freedom of action (either positively or negatively) and
> which in any way impacts upon the handling and administration of the
> bankrupt estate.

*Marshall*, 600 F.3d at 1055 (quoting language from *Pacor, Inc. v. Higgins*, 743

F.2d 984, 994 (3d Cir. 1984) commonly referenced as the *Pacor* test).  *See also*

*Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Assoc.,)*, 439 F.3d

545, 547 (9th Cir. 2006) (recognizing the adoption of the *Pacor* test).[19]

    In *Celotex Corp v. Edwards*, 514 U.S. 300 (1995), the Supreme Court

noted the comprehensive nature of the Congressional grant of jurisdiction over

such "related to" matters, but it acknowledged that such grant "cannot be

---

[19]  In *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193–95 (9th Cir.
2005), the Ninth Circuit recognized the *Pacor* test, but articulated a modified and narrower "close
nexus" standard for determining related to jurisdiction when the subject proceeding arises post-
confirmation of a plan.  *See Calvert v. Berg (In re Consolidated Meridian Funds)*, 511 B.R. 140,
143–45 (W.D. Wash. 2014) (discussing these tests, and noting the *Pacor* articulation is generally
applied pre-confirmation and "close nexus" applied to post-confirmation proceedings) (citing *In
re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013), and *Ray*, 624 F.3d at 1133).

MEMORANDUM OF DECISION - 14

limitless." *Id.* at 308.  The Supreme Court recognized that the *Pacor* test was an attempt to strike a balance and was widely adopted by a number of circuits.  *Id.* at n.6.  *Celotex Corp.* also recognized that "[t]he [related to] jurisdiction of the bankruptcy courts may extend more broadly" when dealing with a chapter 11 reorganization than with a chapter 7 liquidation.  *Id.* at 310.

### 2.    The parties' assertions regarding jurisdiction

Parties' assertions regarding jurisdiction and authority are not alone determinative.  They are, however, required.  *See* Rule 7008 (requiring that a complaint "contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge"); Rule 7012(b) (requiring all responsive pleadings to contain equivalent statements).

In the FAC, Wisdom alleged in ¶ 1 that the Court "has original subject matter jurisdiction over this action;" in ¶ 2 that Trustee (and his surety), Stern and Pantera, and NY Life "have all consented to jurisdiction of the Bankruptcy Court by their failure to object;" and in ¶ 3 that "[a]ll matters mentioned herein, arising under Title 11 of the Bankruptcy Code [*sic*] or arising in the underlying Bankruptcy case, constitute core proceedings," citing 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(A), (I) and (O).  FAC at 2 (¶¶ 1–3).

NY Life's answer to these three paragraphs denies that this action is a core proceeding and asserts that it is instead a "related to" proceeding, but states that

MEMORANDUM OF DECISION - 15

NY Life "consents to the jurisdiction of the bankruptcy court."  Doc. No. 82 at 2.[20]

Notwithstanding the parties' contentions, "The bankruptcy court clearly has the power in the first instance to determine whether it has jurisdiction to proceed."  *In re UAL Corp.*, 336 B.R. 370, 372 (Bankr. N.D. Ill. 2006) (quoting *Visioneering Const. & Dev. Co. v. United States Fid. & Guar. (In re Visioneering Const.)*, 661 F.2d 119, 122 (9th Cir. 1981)).  Indeed, it must determine if it has jurisdiction.  It is well settled that a federal court must dismiss a case for lack of subject matter jurisdiction, even should the parties fail to raise the issue.  *Mansfield, Coldwater & Lake Michigan Railway v. Swan*, 111 U.S. 379, 382 (1884); *Fiedler v. Clark*, 714 F.2d 77, 78–79 (9th Cir. 1983); *Cohen v. Property Owners Comm. of Rancho Ruidoso Valley Estates, et al. (In re Cohen)*, 2012 WL 1192779, *2 (Bankr. D.N.M. Apr. 10, 2012).

Under 28 U.S.C. § 157(b)(3), "the bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."  And, under Civil Rule 12(h)(3), incorporated by Bankruptcy Rule 7012(b), "If the court determines at any time that it lacks subject-matter

---

[20]  Among the answers filed, Trustee's contends ¶¶ 2–3 "set forth legal conclusions which do not require an answer."  Adv. Doc. No. 85 at 3.  The answer of Michaelson, his law firm, and McMurtrie denies ¶ 2 on lack of information and asserts ¶ 3 sets forth a legal conclusion to which no answer is required.  Adv. Doc. No. 92 at 3.  This approach does not meet the requirements of Rule 7012(b).  However, inasmuch as the sole issue presently before the Court concerns NY Life, the Court will not further address jurisdictional allegations or issues as to the other defendants.

MEMORANDUM OF DECISION - 16

jurisdiction, the court must dismiss the action."

### 3.    The claims against NY Life are not core

Like the breach of contract claim in *Ray*, 624 F.3d at 1131–33, the various causes of action against NY Life are not core.  The claims sound in fraud, misrepresentation, breach of contract, breach of fiduciary duty, infliction of emotional distress, and the like.  They are not matters whose "existence depends on a substantive provision of bankruptcy law," or causes "created or determined by a statutory provision of the Bankruptcy Code."  *Id.* at 1131.  They therefore do not "arise under" the Code.

Furthermore, they do not "arise in" a bankruptcy case within the contemplation of the statute.  None of the claims constitute an "administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum."  *Id.*  In the language of *Eastport Assocs.*, "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but . . . it is an 'otherwise related' or non-core proceeding."  935 F.2d at 1076 (quoting *Wood*, 825 F.2d at 97).

Wisdom nonetheless alleges that core jurisdiction does exist.  His FAC specifically cites to 28 U.S.C. §§ 157(b)(2)(A), (I) and (O).  The Court disagrees that these provisions apply.

MEMORANDUM OF DECISION - 17

First, 28 U.S.C. § 157(b)(2)(I) concerns "determinations as to the

dischargeability of particular debts."  There is nothing in the FAC that suggests

such a determination is at issue or implicated.[21]

   Next, while the rather broad language in 28 U.S.C. § 157(b)(2)(A)

("matters concerning the administration of the estate") and § 157(b)(2)(O) ("other

proceedings affecting the liquidation of assets of the estate or the adjustment of the

debtor-creditor or the equity security holder relationship[]") might seem

applicable, the judicial construction of these "catch-all" provisions is not so

liberal.  This Court is required to narrowly construe these provisions.  *Dunmore v.*

*U.S.*, 358 F.3d 1107, 1115 (9th Cir. 2004) ("We have previously instructed that

bankruptcy courts should read narrowly the § 157(b)(2)(O) 'catch-all provision' to

avoid potential constitutional problems[.]"); *Pionbo Corp. v. Castlerock Properties*

*(In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir. 1986) (concluding that

"state law contract claims that do not specifically fall within the categories of core

proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings

under § 157(c) even if they arguably fit within the literal wording of the two catch-

all provisions, § 157(b)(2)(A) and (O)."); *Bethlahmy, IRA v. Kuhlman (In re ACI-*

*HDT Supply Co.)*, 205 B.R. 231, 236 (9th Cir. BAP 1997) ("[A] state law claim

against a non-debtor in his individual capacity . . . not fall[ing] squarely within

§ 157(b)(2)(B)–(N) could not be a core proceeding merely by virtue of the catch-

---

[21]  Wisdom received a discharge on August 5, 2011.  Case No 11-01135-JDP at Doc. No.
38.  No § 523 actions have been filed.

MEMORANDUM OF DECISION - 18

all provisions of 157(b)(2)(A) or (O)." (citing *In re Cinematronics*, 916 F.2d 1444, 1450 (9th Cir. 1990)).

Though the exemption issues addressed in the TFR Decision were matters clearly within the Court's core jurisdiction, *see* 28 U.S.C. § 157(b)(2)(B), those exemption issues were fully heard and finally resolved, and that decision was affirmed on appeal. The exemption issues are not what the instant adversary proceeding is about; they merely provide a historical context or reference for the several fraud, negligence and other state law contentions raised.

The Court concludes there is no core jurisdiction, even considering Wisdom's attempted invocation of the catch-all provisions of 28 U.S.C. § 157(b)(2)(A) and (O).

### 4.    The claims against NY Life are not "related to"

The question thus becomes—for the purposes of reaching the instant Motion—whether the action as against NY Life is a related to, non-core proceeding. In its answer, NY Life specifically alleges that it is, and it then consents to this Court's authority to enter final orders and judgment. *See* 28 U.S.C. § 157(c)(2) (providing that the bankruptcy court can "with the consent of all the parties to the proceeding" hear and determine a non-core issue subject to review under 28 U.S.C. § 158).

Wisdom, who alleged only core jurisdiction, did not expressly consent to this Court's hearing and determining the proceeding against NY Life as a non-core

MEMORANDUM OF DECISION - 19

matter under § 157(c)(2).  However, in the Ninth Circuit, consent can be implied.

*Exec. Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.)*,

702 F.3d 553, 567–68 (9th Cir. 2012) ("*Bellingham*"), *aff'd Exec. Benefits Ins.*

*Agency v. Arkison*, __ U.S. __, 134 S.Ct. 2165 (2014) ("*Arkison*").[22]  *See also*

*Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 456–62 (9th Cir. BAP 2013).

Wisdom's commencement of the adversary proceeding in this Court, his assertions

of core jurisdiction, and his lack of objection to this Court entering an order on the

pending motion, would seem to evidence such implicit consent.

　　　But parties' consent under 28 U.S.C. § 157(c)(2) relates only to this Court's

authority to enter final orders and judgments instead of proposed findings and

conclusions.  It is a matter of authority to exercise jurisdiction that otherwise

exists.  Such consent cannot create jurisdiction where it does not exist.  *Mitchell v.*

*Maurer*, 293 U.S. 237, 243 (1934) (holding that a lack of subject matter

jurisdiction cannot be waived by the parties, nor conferred by the parties'

agreement).

　　　The threshold question of jurisdiction depends on whether the action

against NY Life is "related to" the bankruptcy.  28 U.S.C. § 1334(b).  There is,

generally speaking, a "relation" between the exemption issues determined by the

TFR Decision and the claims asserted in the instant proceeding against NY Life.

NY Life's surrender and liquidation of the policies was based on Trustee's

---

[22]  As of today, *Bellingham* remains good law in the Ninth Circuit.  *See Mastro v. Rigby*, 764 F.3d 1090, 1094–95 (9th Cir. 2014).

MEMORANDUM OF DECISION - 20

obtaining Court orders related to the exemptions as well as NY Life's own views

of the requirements of § 542.  But this is not the same as, and does not require, a

conclusion that the present suit against NY Life is "related to" the bankruptcy

under 28 U.S.C. §§ 1334(b) and 157(a) and (c).

In a post-*Pacor* case, *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d

797 (3d Cir. 1985), the Third Circuit considered a state court tort action

commenced post-petition by a chapter 7 debtor alleging malicious prosecution,

defamation and interference with contractual relations, contentions that were

grounded in post-bankruptcy conduct and events.  The defendants removed the

action to the bankruptcy court, which then denied a motion to remand, and later

entered summary judgment for the defendants.  The district court, on appeal,

reversed the decision of the bankruptcy court based on lack of jurisdiction, and the

Court of Appeals affirmed the district court's decision.

The district court had concluded that it lacked jurisdiction over the tort

action because it was not a civil proceeding "related to cases under title 11,"

narrowly construing this term of art.  But the defendants argued that "related to"

jurisdiction was broader and intended to mirror pendant jurisdiction, and that the

district court should "assume jurisdiction whenever that will avoid fragmentation

of litigation and duplication of effort, and further judicial economy."  *Id.* at 802.

The Court of Appeals, however, noted that in *Pacor* it had "explicitly [] rejected

the construction of 'related to' that appellants advance now: '[T]he mere fact that

MEMORANDUM OF DECISION - 21

there may be common issues of fact between a civil proceeding and a controversy

involving the bankruptcy estate does not bring the matter within the scope of

section 1471(b).  Judicial economy itself does not justify federal jurisdiction.'"  *Id.*

(citing *Pacor*, 743 F.2d at 994 and referencing 28 U.S.C. § 1471, the precursor to

28 U.S.C. § 1334(b)).[23]

A primary bankruptcy treatise indicates that certain civil proceedings are

not within 28 U.S.C. § 1334(b)'s grant of jurisdiction if they:

> are so tangential to the title 11 case or the result of which would have
> so little impact on the administration of the title 11 case[.] . . .  A civil
> proceeding that does not meet that standard—that is, is not "related" to
> the title 11 case—falls outside of the grant of jurisdiction to the district
> courts contained in section 1334(b).  Put another way, litigation that
> would not have an impact upon the administration of the bankruptcy
> case, or on property of the estate, or on the distribution to creditors,
> cannot find a home in the district court based on the court's bankruptcy
> jurisdiction.

*See* 1 Collier on Bankruptcy, ¶ 3.01[3][e][v] (Alan N. Resnick & Henry J.

Sommer eds., 16th ed. 2014).  Thus the treatise notes: "It is not surprising to learn

that a suit brought by a debtor on a cause of action that was not property of the

estate because it arose after bankruptcy . . . is not related to the bankruptcy case,

since it would benefit the debtor, and not the estate."  *Id.* (citing *Bobroff*; other

citations omitted).  Other courts have similarly concluded that a debtor's tort

claims growing out of a defendant's post-petition conduct do not effect the estate

---

[23]  *Bobroff* also addressed the fact that the debtor filed a chapter 7, converted to chapter
13, and was later reconverted to chapter 7, and that the causes accrued during the chapter 13 stage
of the case.  Such issues are now subject to § 348(f).  This nuance does not vitiate the strength of
the court's primary jurisdictional holding.

MEMORANDUM OF DECISION - 22

and are not related to the case, noting that recoveries therefrom inure to the debtor, not the estate. *See, e.g., Kovalchick v. Dolbin (In re Kovalchick)*, 2006 WL 2707428, at *4–5 (M.D. Pa. Sept. 19, 2006).

In *Treadway v. United Bank & Trust Co. (In re Treadway)*, 117 B.R. 76 (Bankr. D. Vt. 1990), a debtor sued for breach of fiduciary duty, good faith and undivided loyalty based on alleged conduct of the defendant earlier in the bankruptcy case. The defendant moved to dismiss for lack of subject matter jurisdiction. The court agreed:

> Debtor argues that this proceeding is excepted from the general rule that post-petition Chapter 7 acquisitions are not part of the Bankrupt's Estate, because the facts which give rise to its cause of action occurred as part of the Estate's administration. Debtor states the "entire cause of action which [it] seeks to bring against the bank arose from the bank's participation in this bankruptcy case as a creditor as well as its participation in this case as a fiduciary to the debtor." Debtor's "Memorandum in Opposition to Defendant's Motion to Dismiss," page 4.

> We discuss only our subject matter jurisdiction because its outcome is determinative of this proceeding. Although Debtor's post-petition cause of action against Trust arose as a direct result of the Chapter 7 Trustee's turnover action and although Bank has filed a proof of claim and sought to obtain attorney fees, costs and post-petition interest under § 506, we dismiss Debtor's action for lack of subject matter jurisdiction.

*Id.* at 79. After exhaustively evaluating, and rejecting, arguments of core jurisdiction, the court turned to the question of related to jurisdiction. Relying on *Pacor*, *Bobroff*, *Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir. 1983), and similar cases, and because the outcome of the suit would have no impact on

MEMORANDUM OF DECISION - 23

the administration of the estate, or adjust a debtor/creditor relationship, and

recoveries would inure solely to the debtor not the estate, the court concluded it

lacked "the requisite 'significant connection' or 'conceivable effect' for 'related

to' jurisdiction."  *Id.* at 85–87.

In *Cohen*, debtors' amended complaint identified causes of action under 42

U.S.C. §§ 1983 and 1985, fraud, conspiracy, negligent and intentional infliction of

emotional distress, and other claims seeking significant damages.  2012 WL

1192779.  That court held:

> State law causes of action and other federal non-bankruptcy
> causes of action that arise *after* the filing of a Chapter 7 bankruptcy
> case belong to the debtor.  . . .  However, because any recovery based
> on such causes of action will have no conceivable effect on the
> bankruptcy estate, the claims are not "related to" the Plaintiffs'
> bankruptcy case and the Court lacks jurisdiction to hear them.  . . .
> Plaintiffs' causes of action as set forth in the Amended Complaint are
> either federal non-bankruptcy causes of action, or state law causes of
> action, including civil rights claims, common law conspiracy,
> intentional infliction of emotional distress, and racketeering as defined
> under New Mexico law.  None of these causes of action raise
> bankruptcy issues, and, to the extent such causes of action arose post-
> petition, the Court has no jurisdiction to hear them.

2012 WL 1192779*, at *4 (citing *Bobroff* and *Atwood v. GE Money Bank (In re

Atwood)*, 452 B.R. 249, 256 (Bankr. D.N.M. 2011)).

The same situation exists here as in these several cases.  Wisdom's FAC

seeks an award of damages on numerous theories against a host of defendants, one

of which is NY Life.  The causes of action against NY Life in the FAC stem from

MEMORANDUM OF DECISION - 24

its alleged post-petition actions and conduct.[24]  Any recoveries from NY Life under this action would go to Wisdom, not his creditors.  The resolution of the claims against NY Life will have no impact on the estate or its administration. They are not "related to" within the accepted and appropriate construction of that term.

**CONCLUSION**

While perhaps superficially appealing, the idea that the claims against NY Life are "related to" the bankruptcy in the sense required under 28 U.S.C. § 1334(b) does not hold.  That argument is like a stage scrim; it appears to have substance, but with sufficient illumination and focus, it becomes pellucid.

This adversary proceeding as against NY Life must be dismissed for lack of subject matter jurisdiction, and the Court, acting *sua sponte* and under 28 U.S.C. § 157(b)(3) and Civil Rule 12(h)(3), will enter an appropriate order.

DATED:  May 5, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[24]  While the insurance policies were issued pre-petition by NY Life, the complained of conduct giving rise to the allegations of breach of contract, breach of fiduciary duty, infliction of emotional distress, etc., are all necessarily predicated on and arise from the post-bankruptcy liquidation of the policies.

MEMORANDUM OF DECISION - 25