# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 11-01135-JDP** |
| **ALLEN L WISDOM,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **ALLEN L WISDOM,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 13-06045-TLM** |
| | ) | |
| **JEREMY GUGINO; FRANCIS R.** | ) | |
| **STERN; ANTHONY M. PANTERA,** | ) | |
| **IV; NEW YORK LIFE INSURANCE** | ) | |
| **CO.; TERRY MICHAELSON;** | ) | |
| **HAMILTON, MICHAELSON &** | ) | |
| **HILTY, LLP; KAREN** | ) | |
| **MCMURTRIE; & LIBERTY** | ) | |
| **MUTUAL INSURANCE CO.,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE FILED BY DEFENDANTS GUGINO AND LIBERTY MUTUAL INSURANCE COMPANY
_____

Plaintiff Allen Wisdom ("Wisdom"), filed a petition for relief under chapter

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 1

7 on April 19, 2011.[1]  This was an asset case and remained open and subject to

continued administration after Wisdom's discharge in August 2011.  As will be

discussed, in July 2012 Wisdom objected to the Trustee's Final Report ("TFR")

filed by the chapter 7 trustee, Jeremy Gugino ("Gugino").  Wisdom's objections

were overruled and denied in September 2012 and the TFR was approved.  *In re*

*Wisdom*, 478 B.R. 394 (Bankr. D. Idaho 2012) ("*Wisdom I*").  Wisdom appealed

to the District Court, which affirmed in April 2013.  *In re Wisdom*, 490 B.R. 412

(D. Idaho 2013) ("*Wisdom II*").  Wisdom appealed to the Ninth Circuit, Case No.

13-35409, and that appeal is presently pending.

Wisdom subsequently filed the complaint commencing this adversary

proceeding on December 3, 2013.  His "First Amended Complaint," Adv. Doc.

No. 78 ("FAC"), was filed in October 2014.[2]  In it, Wisdom alleges several causes

against Gugino and simultaneously Gugino's surety, Liberty Mutual Insurance Co.

("Liberty Mutual").[3]  Though he does so in counts that at times assert claims

---

[1]  Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532.  Citations to "Rule" are to the Federal Rules of Bankrupcty Procedure and those to "Civil Rule" are to the Federal Rules of Civil Procedure.

[2]  Papers filed in the adversary proceeding will be referred to as "Adv. Doc. No. __" while those filed in the underlying chapter 7, Case No. 11-01135-JDP, will be referred to as "Case Doc. No. __."

[3]  The claims against Liberty Mutual, Gugino's surety, are all based on Gugino's alleged conduct.  The Court hereafter refers to defendants Gugino and Liberty Mutual together as simply "Gugino" in addition to referring to Gugino as an individual where context requires.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 2

against other defendants,[4] Wisdom contends Gugino (a) "breached a contract" by not selling certain litigation settlements to Wisdom; (b) breached several alleged "fiduciary duties" to Wisdom; (c) is liable on theories of negligence, negligence per se, and gross negligence; (d) tortiously interfered with contract; (e) committed constructive fraud; (f) intentionally and negligently inflicted emotional distress; (g) slandered Wisdom; and (h) engaged in civil conspiracy.  These claims are mostly, though not exclusively, based on Gugino's liquidation of specific life insurance policies, which also formed the basis of Wisdom's TFR objection.  In addition, Wisdom raises claims based on Gugino's settlement of various lawsuits which constituted property of the estate.  And overarching these claims, Wisdom contends that Gugino never met the statutory qualifications to act as trustee.

Now before the Court is a motion for summary judgment filed by Gugino and Liberty Mutual on August 27, 2015.  Adv. Doc. No. 117 ("Summary Judgment Motion").  It primarily contends that the issue of Gugino's qualification is resolved by the *de facto* trustee doctrine, that his status as trustee provides immunity, and that claim preclusion bars the present litigation.  It, and Gugino's motion to strike certain of Wisdom's submissions, Adv. Doc. No. 142 ("Motion to Strike"), were properly noticed and heard on January 13, 2016 and taken under

---

[4]  The Court discussed the nature of Wisdom's allegations against multiple defendants in the same counts when determining that his claims in this adversary proceeding against New York Life Insurance Co. ("NY Life") would be dismissed on jurisdictional grounds. *Wisdom v. Gugino (In re Wisdom)*, 2015 WL 2128830, at *5 (Bankr. D. Idaho May 5, 2015) ("*Wisdom III*").

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 3

advisement.[5]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b).

Wisdom's claims against Gugino all arise from Gugino's performance of duties as

a chapter 7 trustee and, thus, "arise in" the case and are therefore core proceedings

under 28 U.S.C. § 157(b). *Schultze v. Chandler*, 765 F.3d 945, 948–49 (9th Cir.

2014); *Walsh v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisconsin (In re

Ferrante)*, 51 F.3d 1473, 1476 (9th Cir. 1995); *Maitland v. Mitchell (In re Harris

Pine Mills)*, 44 F.3d 1431, 1438 (9th Cir. 1995).[6]

## PRO SE LITIGANTS

The Court makes reasonable allowances for pro se litigants and liberally

construes their pleadings and papers.  However, pro se litigants are still subject to,

and required to meet and follow the requirements of, the Code, Rules and Local

---

[5]  The motion, Adv. Doc. No. 142, does not specify the portions of Wisdom's
declarations Gugino seeks to strike.  That information is located in a supporting brief, Adv. Doc.
No. 143.  For simplicity, the Court will refer to the two together as the "Motion to Strike."

[6]  The FAC alleges not only that this Court has subject matter jurisdiction but that "all
matters" arise under the Code or arise in the case and, therefore, are core proceedings.  *Id.* at 2;
*see also* Rule 7008 (requiring a statement in the complaint as to whether the proceeding is core or
non-core).  Gugino's answer to the FAC admits subject matter jurisdiction, but asserts the FAC's
allegations regarding the core nature of the proceedings are "legal conclusions which do not
require an answer."  Adv. Doc. No. 85 at 3.  Gugino is wrong.  Rule 7012(b) expressly requires
that "[a] responsive pleading shall admit or deny an allegation that the proceeding is core or non-
core."  However, Gugino's conduct throughout this matter (including the request for summary
judgment) acknowledges and manifests consent to this Court's entry of final orders and judgment
as to any matter that is non-core or that might be argued to be statutorily designated as core but
outside the Court's constitutional authority to enter final judgment.  *See Wellness Int'l Network,
Ltd. v. Sharif*, __ U.S. __, 135 S.Ct. 1932, 1947–48 (2015) (recognizing express and implied
consent).

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 4

Bankruptcy Rules, and they bear the burdens generally imposed on litigants for establishing a proper basis for relief or defenses raised. *See*, *e.g.*, *Heaton v. Boudreau (In re Miller)*, 2014 WL 3408028, *1 n.5 (Bankr. D. Idaho July 10, 2014).

**SUMMARY JUDGMENT STANDARD**

This Court has articulated the summary judgment standard as follows:

> Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

> The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

> The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)).

*Thorian v. Baro Enters., LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 5

2008).

## FACTS

### A.    Judicial notice

The facts upon which this Decision is based are established, for the most part, by the record in the chapter 7 case.  The parties have asked the Court to take judicial notice of the record in Wisdom's bankruptcy case and this adversary proceeding, and of the events that transpired throughout both.  *See*, *e.g.*, Adv. Doc. No. 137 at 10–11 (Wisdom's opposition to the Summary Judgment Motion); Adv. Doc. No. 117-2 (Gugino statement of undisputed facts, referencing docket events). The Court grants such requests under Fed. R. Evid. 201.  *See also Wisdom III*, 2015 WL 2128830, at *1 (addressing use of judicial notice in this proceeding).[7]

### B.    The Motion to Strike

The parties filed declarations in support and opposition to the Summary Judgment Motion.  Gugino moved to strike certain portions of Wisdom's declaration in opposition to the Summary Judgment Motion, Adv. Doc. No. 137-1,

---

[7] Judicial notice of the filing of a document is appropriate to establish that a filing occurred and on what date—should that limited information be relevant to the matters at hand. Contrary to Wisdom's evident belief, it does not allow the Court to "take notice of" (*i.e.*, give evidentiary weight to) what is asserted in such documents.  Notice of the existence of the documents filed in the record does not establish the truth of the facts contained in any particular document. *See Credit All. Corp. v. Idaho Asphalt Supply Inc.*, 95 B.R. 143, 146–47 (9th Cir. BAP 1988).  There is one limited exception, though it has nothing to do with judicial notice but, rather, concerns the use of certain pleadings against the party who filed them under Fed. R. Evid. 801(d).  *See Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 444 n.32 (Bankr. D. Idaho 2008) (noting assertions in a debtor's schedules made under penalty of perjury may be considered as evidentiary admissions); *see also In re Vee Vinhnee*, 336 B.R. 437, 449 (9th Cir. BAP 2005).

and its attached exhibits, Adv. Doc. Nos. 137-2 to 137-7.  Gugino's Motion to Strike also challenges portions of Wisdom's declaration regarding a separate motion for summary judgment brought by Wisdom's former counsel, Stern and Pantera, Adv. Doc. No. 138-1, and an attached exhibit, Adv. Doc. No. 138-4.[8]

## 1.    Procedural issues

Gugino set the Motion to Strike for hearing on December 16, 2015.  Adv. Doc. No. 145.  Wisdom objected to that motion.  Adv. Doc. No. 148.  When Wisdom contacted the Court on December 16 and advised that he would be unable to appear, the Court continued all matters to January 13, 2016.  Adv. Doc. No. 149.

Wisdom's objection to the Motion to Strike raises procedural contentions under the Rules and Local Rules.  They are not well taken.  Even allowing for Wisdom's invocation of Rule 9006(a)(1)(C) and 9006(f) (adding three days for mail service), the December 3 Motion to Strike could properly be heard on December 16.  *See* Rule 9006(d) (requiring 7 days' notice of hearing on motions).  Wisdom's reliance on LBR 2002.2(c) is misplaced, it does not require a longer notice period.  This Local Rule applies only when a movant elects to set a hearing more than 28 days from the date of the motion's filing, which then triggers a deadline of 14 days before hearing for any objection, and allows for a reply to

---

[8]  The Stern/Pantera motion for summary judgment was addressed in a separate Decision.  *See* Adv. Doc. No. 156.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 7

objection 7 days prior to hearing.  Gugino's scheduled hearing was set for 13 days

after the Motion to Strike was filed.  Thus LBR 2002.2(c) is inapplicable.

Wisdom's objection also complains that the time available before

December 16 was inadequate and the hearing should be postponed to a later date.

As it happens, that is precisely what occurred when the Court, due to Wisdom's

assertion of an inability to make it to the courthouse on December 16, continued

the matters to January 13.

Wisdom's objection further asserted an "intent" and "right" to present

evidence through witnesses at the hearing on the Motion to Strike.  However, the

Motion to Strike, and the sufficiency of summary judgment declarations and

submissions, is something resolved on the face of those documents, and does not

warrant testimony.  In a similar vein, Wisdom "requested" in the objection that the

Court require Gugino, Stern and Pantera to personally appear at the hearing on the

Summary Judgment Motion and the Motion to Strike.  Not only is live testimony

unnecessary and inappropriate at a hearing on those types of motions, Wisdom's

insertion of these matters in the objection was procedurally improper and did not

require a ruling from the Court.

Prior to the January hearing, Wisdom filed a "supplement/augmentation of

the record" in opposition to the Summary Judgment Motion.  Adv. Doc. No. 147.

Under LBR 7056.1(b), all submissions by opponents to a summary judgment

motion are required to be filed 14 days prior to hearing, and the only filing

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 8

allowed 7 days before hearing is the motion's proponent's reply brief. The

December 9 submission is procedurally improper, and therefore disregarded. In

addition, this "augmentation" consists of a copy of Wisdom's brief in the Ninth

Circuit appeal of the TFR decision, which is fundamentally argument and, as

discussed further below, not considered as evidentiary material in connection with

the Summary Judgment Motion.[9]

Wisdom then filed a second "augmentation," Adv. Doc. No. 151, on

January 8, 2016, containing another declaration, certain discovery responses, and

redacted third party letters, emails and the like complaining about Gugino (much

of which appears redundant of material earlier submitted and subject to the Motion

to Strike). This submission was also untimely and improper under LBR 7056.1,

and will be disregarded on that basis.

### 2.    Substantive issues

Gugino's Motion to Strike relies on Civil Rule 56(c)(4), incorporated by

Rule 7056. That rule provides:

> An affidavit or declaration used to support or oppose a motion must be
> made on personal knowledge, set out facts that would be admissible in
> evidence, and show that the affiant or declarant is competent to testify
> on the matters stated.

---

[9]  Wisdom also requested the Court take judicial notice of this brief under Fed. R. Evid.
201, as he previously has done regarding a number of other similar documents. The mere fact
that Wisdom filed an appellate brief in the Ninth Circuit, which as above discussed might be
something capable of judicial notice, is irrelevant to the issues under the pending motions.
Nothing said in the brief is subject to judicial notice. *See supra* note 7.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 9

This Court has therefore held that attorney affidavits not based on personal knowledge are to be disregarded. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 594 (Bankr. D. Idaho 2000) (citing *Grzybowski v. Aquaslide N' Dive Corp. (In re Aquaslide N' Dive Corp.)*, 85 B.R. 545, 548 (9th Cir. BAP 1987)). Facts based on personal knowledge do not include or encompass opinions or legal conclusions. *Idaho Conservation League v. Atlanta Gold Corp.*, 844 F. Supp. 2d 1116, 1124–25 (D. Idaho 2012) (holding that a court must disregard statements that are not made on personal knowledge, and statements that are not factual statements but, rather, opinions); *McReynolds v. Lowe's Companies, Inc.*, 2008 WL 5234047, *6 (D. Idaho Dec. 12, 2008) (noting that affidavits should not contain ultimate or conclusory facts and conclusions of law, and a court is not bound to accept as true a legal conclusion couched as a factual allegation) (citing *DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 392 F. Supp. 2d 1206, 1210 (D. Idaho 2005)).

Gugino moves to strike paragraphs 16–21 and 23–31 of Wisdom's declaration, Adv. Doc. No. 137-1, primarily because those paragraphs present opinion, legal argument or legal conclusions, and also because of Wisdom's lack of personal knowledge. The Court concludes the motion is well taken as to paragraphs 17–21, 24, and 26–31, and it will be granted as to those paragraphs. The Court will disregard the legal conclusions and opinions and personal characterizations of docket events and filings. The Court determines, however,

that portions of paragraphs 16, 23 and 25 contain some statements by Wisdom that are based on personal knowledge (*e.g.*, on a certain date, documents were received by him). Thus these three paragraphs will not be stricken, however, the Court will disregard the conclusions, opinions and characterizations within those paragraphs.

Gugino also seeks to strike Exs. A-5-a through A-5-d attached to that declaration. The Court will grant the motion as to Exs. A-5-b through A-5-d. These are letters and emails related to unidentified third parties' complaints about Gugino in other unidentified bankruptcy cases for which no foundation has been laid. In addition, they are irrelevant to the issues in this case.[10] The motion will be denied as to Ex. A-5-a which consists of letters and emails related to Wisdom's complaints to the UST about his own case.

As noted, Gugino's motion also challenges paragraphs 7, 9 and 10 and Exhibit A-3 of Wisdom's declaration regarding the Stern/Pantera motion for summary judgment, Adv. Doc. No. 138-1. Paragraphs 9 and 10 are extended narratives by Wisdom regarding both his former counsel and Gugino. They include personal opinion, legal conclusions, argument, speculation or surmise about others' intent, and similar improper material under the summary judgment rule and authorities. In addition, certain of the assertions are hearsay or lack

---

[10]   Wisdom raised concerns about Gugino's conduct in Wisdom's bankruptcy case, Case No. 11-01135-JDP. Gugino's alleged rude and uncivil conduct in other cases is irrelevant, Fed. R. Evid. 401, and inadmissable character evidence, Fed. R. Evid. 404 (character evidence is not admissible to prove conduct).

foundation.  The motion is well taken as to paragraphs 9 and 10 and will be granted, and such matters will be disregarded.

Paragraph 7 asserts Wisdom's appointed *pro bono* counsel in the Ninth Circuit appeal filed a motion to supplement the record on November 6, 2015, and attaches the documents that were appended to such motion ("Supplemental Evidence") as Ex. A-3.  Gugino objects on the grounds that this motion was opposed.  To resolve this matter, the Court has taken judicial notice of the docket of the Ninth Circuit Court of Appeals in Case No. 13-35409.  The November 6 motion to supplement the record on appeal was Doc. No. 40.  On January 15, 2016, the Ninth Circuit denied that motion, as well as an additional December motion to supplement the record, Doc. No. 47.  *See id.*, Doc. No. 57 (order).  The Motion to Strike paragraph 7 and Ex. A-3 to the declaration will be granted.

### C.    Facts relevant to the Summary Judgment Motion

#### 1.    Gugino's appointment as chapter 7 trustee in Wisdom's bankruptcy case

When Wisdom filed his chapter 7 petition on April 19, 2011, Gugino was appointed as interim trustee by the United States Trustee ("UST") from the panel of private chapter 7 trustees.  *See* § 701(a)(1) (the UST shall "[p]romptly after the order for relief . . . appoint one disinterested person that is a member of the panel of private trustees . . . to serve as the interim trustee in the case."); *see also* 28 U.S.C. § 586(a)(1) (requiring the UST to establish, maintain and supervise a panel

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 12

of private trustees that are eligible and available to serve in chapter 7 cases).  The

notice of the filing of the case, of the scheduling of a § 341(a) meeting, and of the

appointment of Gugino as trustee, was immediately issued by the Court upon

Wisdom's filing of the petition.[11]  No trustee was elected and Gugino continued to

serve as trustee throughout the case.  *See* § 702.

When Wisdom commenced this adversary proceeding, he sued on Gugino's

bond by naming "Doe Surety Company."  Adv. Doc. No. 1.  An initial answer was

filed by Gugino and Doe Surety Company.  Adv. Doc. No. 11.  In Wisdom's April

30, 2014 declaration concerning a different matter, he outlined the information

relative to his identification of Liberty Mutual as the surety on Gugino's bond.

Adv. Doc. No. 39-1.[12]

The UST provided Wisdom copies of the chapter 7 blanket bond in January

2014 which Wisdom characterized as "non-conformed."  Following a status

hearing, Wisdom made an additional request to the UST, *id.* at 5–6 (Ex. A), to

which the UST responded by a letter dated February 19, *id.* at 7–16 (Ex. B).  The

UST's documents identify Liberty Mutual as the surety and include the following:

a "rider" effective as of April 4, 2002 changing the bond's number; a blanket bond

---

[11]  The time of petition filing was 14:48:07 that day, and the notice was immediately
generated and entered of record at 14:48:17.  Case Doc. Nos. 1, 2.  This reflects operation of the
automated case-assignment system discussed later in this Decision.

[12]  This declaration was filed in support of a brief and motion urging the Court's recusal,
a request that was denied.  Despite its original purpose, Wisdom continues to rely on the
declaration in connection with his FAC against Gugino and his opposition to the Summary
Judgment Motion.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 13

for chapter 7 trustees in Region 18 (which includes the District of Idaho) effective

December 5, 2002 through April 4, 2004; a renewal certificate dated April 28,

2011 but effective April 4, 2011 which includes Gugino among the listed chapter

7 trustees; and a renewal certificate effective April 4, 2013.  These attachments

each bear a Court stamp dated February 18, 2014.

The penultimate attachment establishes Gugino was one of the chapter 7

trustees in Region 18 covered by the blanket bond as of April 4, 2011, 15 days

prior to Wisdom's April 19 petition.  Each of the documents identifies Liberty

Mutual as the surety on the bond.[13]

The documents, including the April 2011 renewal certificate, reflect the

UST filed the documents with the Court in February 2014.  This forms the basis of

Wisdom's contentions that Gugino was not properly qualified to serve as trustee

under § 322(a) which will be discussed *infra.*

> **2.    Gugino's liquidation of insurance policies and payment of
> Wisdom's claimed exemption therein, and the subsequent
> approval of Trustee's Final Report over Wisdom's
> objection**

As found and stated in *Wisdom III*:

> On May 18, 2011, Wisdom amended his Schedules B and C.
> Doc. No. 19.  The amendments to schedule B disclosed Wisdom's
> interest in five different insurance policies with N.Y. Life, with the

---

[13]   In early May, Wisdom sought to amend his original complaint in order to, *inter alia,*
substitute Liberty Mutual as surety in place of the Doe Surety Company.  Adv. Doc. No. 40.  Due
to the presence of several other issues, the order granting the motion to amend was entered in
September, Adv. Doc. No. 76, and the FAC was filed the following month.

following cash values: policy no. 3065 ($1,511.00); policy no. 754 ($943.00); policy no. 860 ($3,238.00); policy no. 504 ($4,055.00); and policy no. 344 ($62,037.00). Wisdom's amendments to schedule C claimed each of the first four policies as exempt to their full alleged values under Idaho Code § 11-605(10), and claimed $5,000 as exempt in policy no. 344, also pursuant to Idaho Code § 11-605(10).

Trustee objected to Wisdom's amended exemptions, contending that Idaho Code § 11-605(10) allows one exemption, capped at a total of $5,000.00, as to all the policies. Trustee therefore specifically objected to the exemptions claimed in the first four policies, since $5,000 had been claimed by Wisdom in policy no. 344 under that section. Doc. No. 23.

While the record reflects Wisdom was served with this objection, Wisdom did not oppose or otherwise respond to it. On June 29, 2011, the Court entered an Order sustaining Trustee's objection. Doc. No. 28. The exemptions asserted in the four smaller policies were thus disallowed. *Id.* Wisdom's $5,000 exemption claimed in policy no. 344 was not challenged or affected. Trustee continued to administer the estate and one year later filed Trustee's Final Report and Application for Compensation, Doc. No. 144 (the "TFR") on June 5, 2012. The TFR reflects that N.Y. Life initially liquidated one policy and provided the Trustee with a check for $67,152.64 representing its proceeds. *Id.* at 5. Trustee then sent a $5,000 check to Wisdom for his allowed exemption under Idaho Code § 11-605(10). *Id.* at 6. After the Court's June 2011 Order disallowing claims of exemption, N.Y. Life then liquidated the remaining policies and provided the funds to Trustee. *Id.*

On June 27, 2012, Wisdom filed an objection to the TFR entitled "Objection to Trustee's Inclusion of Non-estate Assets and Funds Obtained by Fraud in TFR." *See* Doc. No. 150 ("TFR Objection"). The TFR Objection included Wisdom's affidavit, *id.* at 14–15, along with copies of several letters and their attachments. According to the affidavit, Wisdom "first became aware" of Trustee's demand for liquidation of the policies on June 13, 2011, after receiving a June 7, 2011 letter from N.Y. Life enclosing a copy of Trustee's letter to it asking that policy no. 344 be liquidated and the other four policies be "frozen." In September 2011, Wisdom learned from copies of additional letters that the other four policies were being surrendered.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 15

In the TFR Objection, filed a year after Wisdom "first learned" of Trustee's efforts to liquidate policy no. 344 and nine months after learning of the liquidation of the other policies, Wisdom made the following assertions:

—that Trustee violated Wisdom's rights when he "unilaterally" decided Wisdom would claim the $5,000 exemption on policy no. 344, and that this act was an "intentional misrepresentation" by Trustee;

—that in contacting N.Y. Life shortly after the § 341(a) meeting regarding liquidation of policy no. 344, Trustee demonstrated his intent to defraud;

—that Trustee had a duty to disclose to N.Y. Life that Wisdom had claimed the policies as exempt, and intentionally failed to do so, constituting fraud by silence;

—that Trustee's order to N.Y. Life to liquidate policy no. 344 was without authority and thus violated Trustee's fiduciary duty to Wisdom and constituted fraud;

—that, after the Court's ruling sustaining Trustee's objection to exemption in the four smaller policies, Trustee's communication to N.Y. Life that these policies were not exempt and were to be liquidated was a false and intentional misrepresentation, deceptive, and reflected Trustee's intent to commit a fraud on Debtor and on N.Y. Life.

In the TFR Objection, and a later "reply" filing, Doc. No. 154, Wisdom argued that Idaho Code § 11-605(9) provided an exemption for all the policies. This, Wisdom contended, made Trustee's representations to N.Y. Life that the policies were not exempt knowingly and intentionally fraudulent.

Wisdom asked for return of the proceeds of the policies (net of the $5,000 he acknowledged he already received) from estate assets and from Trustee's surety bond; for denial of any compensation to Trustee; and for reference of the matter to the U.S. Attorney and to the U.S. Trustee.

The TFR Objection was heard in July 2012 and taken under advisement. On September 11, 2012, the Court entered a Memorandum

of Decision, Doc. No. 156 ("TFR Decision"), overruling Wisdom's objections and approving the TFR.

The issues Wisdom raised, as characterized by the Court, were: (1) whether Trustee's decision to honor Wisdom's exemption, expressly claimed under Idaho Code § 11-605(10) on policy no. 344, was inappropriate; (2) whether a chapter 7 trustee has a duty to honor an exemption of property of the estate when the debtor fails to properly claim it; and (3) whether an express claim to an exemption in an insurance policy under Idaho Code § 11-605(10) constitutes, in addition, an implied claim of exemption under Idaho Code § 11-605(9).

The Court addressed each of these issues at length, and determined that Wisdom's objections were not well taken factually or legally. The Court found Wisdom was entitled solely to the $5,000 exemption he had expressly asserted and been duly paid. The Court found Wisdom's assertion that Trustee "unilaterally" decided the $5,000 exemption would be made on policy no. 344, and his assertions that Trustee made intentional misrepresentations, "were wrong." 478 B.R. at 397.  It stated:

> On this record, Trustee could properly assume that the exempt status of Debtor's insurance policies had been resolved. Trustee was therefore justified in seeking to liquidate the policies to recover the value of the four nonexempt policies, and to recover the excess value in the largest policy. When he did so, and after having paid Debtor his exemption from the proceeds of policy number 344, Debtor did not object. Upon receipt of the check from Trustee representing the amount of his exemption claimed [in] the largest insurance policy, Debtor cashed it.

> Accordingly, Trustee's "decision" to honor Debtor's $5,000 exemption in the largest insurance policy's cash value was consistent with the order entered by the Court. Because of this, Debtor's suggestions that Trustee's actions were "unilateral" or inappropriate are baseless, and most assuredly, Trustee engaged in no "intentional misrepresentation" or "fraud" in dealing with the estate assets.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 17

*Id.* at 398. The Court also found:

> As property of the estate, Trustee was under a duty to convert the policies to money available for distribution to Debtor's many creditors. In the exercise of his discretion, he did so by surrendering the policies to New York Life. . . . Upon receipt of the check from the insurance company, Trustee sent Debtor $5,000 to satisfy his exemption claim in the largest policy. At that point, any duty Trustee may have owed to Debtor was properly discharged.

*Id.* at 400.

> Moreover, because Debtor's contentions that Trustee engaged in fraud, misrepresentation, criminal conduct, and the like, are all founded upon Debtor's flawed premise concerning the propriety of Trustee's actions, they lack merit and need not be addressed.

*Id.* at 397.

The TFR Decision and related Order were thereafter affirmed on appeal by the District Court on April 18, 2013. The District Court not only affirmed the Court's construction of Idaho's exemption statutes as applied to the facts, but also its determination that Wisdom's contentions "that the trustee committed fraud and violated his fiduciary duties to the debtor when he surrendered the policies . . . lack merit." 490 B.R. at 417. It concluded that the Trustee's representations to N.Y. Life that the four policies were nonexempt were not false but, rather, were "accurate." "The trustee did not seek to liquidate these policies until after the bankruptcy court had sustained [Trustee's] objections. Thus, the trustee did not engage in any misconduct related to these policies either." 490 B.R. at 418.

*Id.*, 2015 WL 2128830, at *1–4.

### 3.    Gugino's administration of litigation involving Wisdom

The property of the estate included numerous lawsuits filed by Wisdom prior to bankruptcy. *See* Case Doc. No. 1 at 31–32 (listing 14 lawsuits, of which 6

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 18

were shown as pending as of the bankruptcy filing and the balance as "closed" or

"affirmed").  Three of the pending cases were on appeal: *Allen L. Wisdom v.*

*Daniel E. Katz, et al.*, Central District of California Case No. EDCV 07-170-

DSF(SSx), and Ninth Circuit Court of Appeals Case No. 11-55258 ("Katz Case");

*Allen L. Wisdom v. State of Nevada, et al.,* District of Nevada Case No: 3:06-cv-

00094-PMP-RAM, and Ninth Circuit Court of Appeals Case No. 11-16164

("Nevada Case"); and *Allen L. Wisdom v. Terry Michaelson, et al.*, District of

Idaho Case No: 10-cv-00002-CWD, and Ninth Circuit Court of Appeals Case No.

11-35306 ("Michaelson Case").

In August 2011, Gugino filed motions under Rule 9019 seeking approval of

his compromise of the Katz Case (and a related state court case involving Gilbert

and Harshey) for $3,000 and of his compromise of the Michaelson Case for

$3,000.  Case Doc. Nos. 40, 41.  In September 2011, Wisdom, through Stern and

Pantera, filed a motion under § 554 seeking to abandon the Katz Case, the Nevada

Case, and the Michaelson Case as well as a fourth lawsuit.  Case Doc. No. 47.

Gugino objected to that motion.[14]

Gugino's first compromise requests were denied without prejudice in

October 2011, and then renewed through amended motions in November 2011.

---

[14]  This motion to abandon was filed a week after Stern and Pantera filed a motion to withdraw as counsel.  Wisdom objected to his counsels' withdrawal request, and it was later withdrawn only to be followed by another motion to withdraw.  The abandonment motion itself was withdrawn, Case Doc. No. 67, just before a December 6, 2011 hearing at which counsels' second request to withdraw was granted over Wisdom's objection.

Case Doc. Nos. 63–65.[15]  Following Wisdom's objections, the Court at a January

2012 hearing—during which the Court allowed Wisdom to submit competing bids

—approved the compromise of the Katz Case for $4,500 as filed, and approved

the compromise of the Nevada Case at an increased amount of $10,000, both

without overbids by Wisdom.  *See* Case Doc. Nos. 80, 81, 83.  The Court also

gave Wisdom until January 11, 2012 to tender to Gugino a cashier's check for

$9,500, the amount of his overbid, to purchase the Michaelson Case.  Case Doc.

No. 80 (minute entry).  If not tendered, the Court would grant Gugino's

compromise of that litigation for $8,500.[16]

Wisdom appealed the orders regarding the compromise approvals.  In

March 2012, Gugino and Wisdom jointly moved for approval of a compromise.

Case Doc. No. 117.  Under that settlement, all of Wisdom's pending appeals

would be dismissed; Wisdom would waive further appeals on certain matters; and

Wisdom would waive the ability to object to filed claims.  Gugino would

withdraw a turnover request on a vehicle; not renew an opposed request for home

inspection; abandon suits other than those previously compromised; and pay

Wisdom the amount he had paid for his appeal filing fee and transcript costs.  That

motion was granted.  Case Doc. Nos. 136, 138.

Subsequently, and as outlined above, Gugino's TFR was filed and notice

---

[15]  Under the renewed motions, Gugino proposed settlement of the Katz Case for $4,500, the Michaelson Case for $4,500, and the Nevada Case for $3,000.  *Id.*

[16]  The TFR, Case Doc. No. 144, shows Wisdom provided the $9,500.

was provided.  Wisdom objected, but the objections were overruled and the TFR

was approved.  The Idaho District Court affirmed in all regards, and Wisdom

appealed to the Ninth Circuit Court of Appeals, which appeal remains pending.

**DISCUSSION AND DISPOSITION**

### A.    Gugino's qualification and authority as trustee

Many of the arguments Wisdom advances in the FAC, and through

objections to the Summary Judgment Motion, relate to his contentions that Gugino

was never qualified to act as trustee in his case.  *See*, *e.g.*, FAC at 2–3; *see also*

Adv. Doc. No. 137 at 2 (arguing Gugino "never officially or legally accepted the

appointment as trustee in the case;" that "Gugino lacked any authority to conduct

any official duties;" and "that Gugino seized Debtor's . . . assets without any

authority which action constituted fraud").  Gugino argues that, whatever issues

may be raised regarding qualification and acceptance of appointment, they are

answered by the *de facto* trustee doctrine.  *See* Adv. Doc. No. 117-1 at 6–8.

### 1.    Acceptance of appointment and qualification as trustee

Since the advent of the United States Trustee system in 1986, the UST is

required to maintain a panel of private trustees for appointment in chapter 7 cases.

28 U.S.C. § 586(a)(1), (d)(1).  The UST appoints an interim trustee in all chapter 7

cases.  *See* § 701(a)(1).  In Idaho, as in many districts, the process of selecting the

trustee is automated through the case-assignment system providing for random

assignment of an eligible trustee from the panel.[17]

The UST must ensure that the selected trustee qualifies, including being bonded. The UST must also determine the amount of the bond required and the sufficiency of the surety on that bond. *See* § 322(a), (b)(2). Under Rule 2010(a), the UST may authorize a blanket bond that covers a person who qualifies as a trustee in a number of cases and covers a number of trustees.

A trustee who is selected to serve in a chapter 7 case is immediately notified. As reflected by the issuance of the notice in Wisdom's case, Case Doc. No. 2 discussed earlier, that occurs immediately upon the petition's filing. An appointed trustee who is covered by a blanket bond must notify the Court and the UST only if he or she rejects the appointment and, if rejecting, do so within seven days. If the appointed trustee does not reject the appointment in the time allowed, the trustee is deemed to have accepted. Any selected trustee who is not covered by a blanket bond must obtain the required bond and accept the appointment within the same seven days. Rule 2008.

Gugino was so selected, and he did not reject the appointment.[18] Gugino had been for some time, and was at the time of the commencement of Wisdom's

---

[17] Eligibility is addressed in § 321. Additionally, UST regulations proscribe additional standards. *See*, *e.g.*, 28 C.F.R. § 58.3(b).

[18] As previously noted, though the appointment was as interim trustee under § 701, no other trustee was elected at the § 341(a) meeting in this case, and Gugino thereafter served as the trustee in the case. *See* § 702(d).

case, covered by a chapter 7 blanket bond (#016027975).[19]

## 2. Gugino's authority and the *de facto* trustee doctrine

Wisdom does not dispute that Gugino was covered by a blanket bond. Indeed, the case caption was amended based on Wisdom's motion, deleting the reference to a "John Doe Surety" and inserting Liberty Mutual Insurance Company as surety for Gugino. Instead, his arguments regarding Gugino's qualifications and authority revolve around the absence of a bond "filed" with the Court.[20]

Wisdom's primary contention is that the blanket bond was not filed by the UST with the Court until, on this record, February 18, 2014. From this failure springs Wisdom's several claims of lack of authority to act, negligence, constructive fraud, and the like. This type of contention has been previously addressed by the Ninth Circuit and First Circuit Bankruptcy Appellate Panels.

---

[19] Wisdom also raises an argument similar to those in his motion to recuse based on Gugino's prior employment by the Court as a law clerk. That motion to recuse was denied in the bankruptcy case, Case Doc. No. 217, and in this adversary proceeding, Adv. Doc. Nos. 59, 60. Those rulings were affirmed by the District Court. *Wisdom v. Gugino (In re Wisdom)*, 2014 WL 6983382 (D. Idaho Dec. 10, 2014). On appeal, the District Court also rejected a request for issuance of a writ of mandamus. *Id.* The Ninth Circuit affirmed the district court's denial of the writ, and held the recusal ruling could be challenged once a final order or judgment has been entered. Case No. 15-35013 at Doc. No. 8. Here, Wisdom contends Gugino was appointed to the chapter 7 trustee panel while he was still employed by the Court, thus violating 28 U.S.C. § 586(d) and applicable rules thereunder. The short answer is that Gugino ceased employment as a law clerk on August 10, 2007, *see* Adv. Doc. No. 31 at 4, and his initial appointment to the panel by the UST was from August 13, 2007 to December 31, 2007, inclusive, though subject to reappointment or extension. Adv. Doc. No. 137-7 at 2 (letter of appointment). While that letter was dated July 12, 2007, it expressly starts the appointment period effective August 13.

[20] If the argument is that Gugino failed to obtain and file within 7 days of the petition a case-specific bond in Case No. 11-01135-JDP, it is misguided. No such bond is required under statute or rule as Gugino was covered at the commencement of the case by a blanket bond.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 23

In *Hunt v. Goodrich (In re Hunt)*, 2014 WL 1229647 (9th Cir. BAP March 26, 2014), the plaintiff, Peli Hunt, as an agent for Robert W. Hunt, M.D., a debtor medical corporation ("MD") that had been converted from chapter 11 to chapter 7, responded to the objections of the chapter 7 trustee (Goodrich) to MD's exemptions.  Among the plaintiff's arguments was the contention that Goodrich could not object to MD's exemptions because he did not timely or properly accept his appointment as trustee and had not filed his required bond.  The Panel rejected this contention.

> According to MD, Goodrich was required under § 322, within seven days of his appointment, to do each of the following: (1) to file with the court an individual bond covering his conduct in the case, and (2) to file and serve notice of his acceptance of the appointment.  We disagree.  Based on the Bankruptcy Rules governing the acceptance and qualification of trustees, there was nothing improper or untimely about Goodrich's acceptance and qualification.  More specifically, Rule 2010 permitted Goodrich to post a blanket bond covering his trustee services in multiple cases, and Rule 2008 did not require Goodrich to file or serve anything before his appointment as trustee became effective.

*Id.* at *4 (noting that Rule 2008 only requires notice in writing of a rejection of appointment by a trustee under a blanket bond, and the absence of timely rejection is deemed an acceptance of the appointment).

The Panel elaborated on the nature of the plaintiff's contentions, noting that a notice of the commencement of the chapter 7 case had been issued and served and that it identified the trustee.  It stated:

> If MD had any genuine concern regarding Goodrich's selection, acceptance or qualification as trustee, MD should have acted upon

receipt of that notice. Instead, MD waited until Goodrich took actions in the case that MD opposed and then attempted to invalidate those actions by raising unfounded concerns regarding Goodrich's qualification and acceptance of his appointment as trustee.

Even if there had been some technical defect associated with Goodrich's qualification and acceptance (there was not), it is unlikely that such a defect would have justified the invalidation of Goodrich's filings and other official actions months after the fact. *See generally Granderson v. Carpenter (In re Granderson)*, 252 B.R. 1, 5–6 (1st Cir. BAP 2000) (holding that § 322 is not jurisdictional and that untimely filing of trustee's bond did not invalidate trustee's actions in chapter 7 case). To hold otherwise would encourage debtors who disagree with legitimate trustee activities to belatedly raise technical procedural arguments regarding trustee appointment, qualification and acceptance, at the expense of the proper, expeditious and economical functioning of chapter 7 cases.

*Id.* at *5.

In *Hunt*, Goodrich "was covered by a blanket bond on file with the court." *Id.* at *4. In the present case, the record shows the blanket bond—even though in effect before the commencement of Wisdom's case—was not filed with the Court until February 2014. This, however, does not vitiate the strength of the Panel's ruling in *Hunt*.

In *Granderson*, which was embraced by *Hunt*, a chapter 11 trustee's bond was filed 11 days after her appointment[21] rather than 5 days as was then required

---

[21]   *See Granderson*, 252 B.R. at 2–3, explaining the then-chapter 11 trustee's need to obtain a liquidating bond rather than an earlier and mistakenly issued operating bond, which was then provided to the UST and filed with the court; the case was later converted and the trustee's appointment as a chapter 7 trustee was under a blanket bond. The challenge raised under § 322, though two years later, was to the trustee's appointment as chapter 11 trustee, which was argued to be void *ab initio* for failure to timely file the initial bond. *Id.* at 3.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 25

under § 322.[22]  The Panel there found no merit to the argument that the

requirements of § 322(a) are jurisdictional and cannot be waived.

> To the contrary, in considering whether a trustee is qualified to act in
> a particular case, courts generally look to the *de facto* trustee doctrine.
> *See In re Holiday Isles, Ltd.*, 29 B.R. 827 (Bankr. S.D. Fla. 1983)
> ("Court's faced with a trustee's failure to technically qualify have long
> recognized the concept of a '*de facto*' trustee in a bankruptcy estate").
> If the requirements of § 322 were jurisdictional as suggested, and if the
> *de facto* trustee doctrine was not readily available, trustees would be
> regularly exposed to hyper-technical, but meritless litigation as we
> have here, and such a result would ignore years of common sense
> jurisprudence.

*Granderson*, 252 B.R. at 5.   In addition to rejecting the jurisdictional attack, the

Panel elaborated that the *de facto* trustee doctrine applies when "such person has,

since being appointed trustee, 'acted as trustee, . . . held [him/herself] out to be

trustee, and . . . [has] been treated as trustee by the Court, creditors and employees

of the estate and all other interested parties.'"  *Id.* at 5 (citing *In re Holiday Isles,*

*Ltd.*, 29 B.R. 827, 830 (Bankr. S.D. Fla. 1983) and *In re Upright*, 1 B.R. 694

(Bankr. N.D.N.Y. 1979) (applying *de facto* trustee doctrine where trustee filed

bond 12 days after appointment)).  *Gunderson* also rejected arguments that the

court must find "justifiable reliance" of innocent third parties in order to apply the

doctrine.  *Id.* at 6.[23]

---

[22]  Prior to 2009, § 322(a) required the bond to be filed within 5 days of appointment.
*See* Pub. L. 111-16 § 2(2), 123 Stat. 1607 (May 7, 2009) (changing 5 days to 7 days).

[23]  Indeed, if equitable considerations were to be invoked, *Gunderson* suggests the
objectors, "at this late date and having acquiesced in [trustee's] tenure for two years . . . only
strengthen the *de facto* trustee theory.  Estoppel and/or waiver are additional bars to [the
objectors'] Motion."  *Id.* at 6 n. 9.  The same problem is present here.  Wisdom never raised the

(continued...)

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 26

Gugino has acted as the trustee, held himself out to be trustee, and has been

treated as trustee by the Court, creditors, and all interested parties—including

Wisdom—throughout this case.  To be sure, Wisdom alleged defects and errors in

Gugino's performance of his trustee duties.  Indeed, the unsuccessful objection to

the TFR addressed in *Wisdom I* and *Wisdom II* is expressly based on those

contentions.  The technical defect (*i.e.*, the UST's belated filing of the blanket

bond that was in effect as of the commencement of Wisdom's case) is not

jurisdictional, and it does not support removal of Gugino, invalidation of his

earlier actions, or the counts of the FAC expressly relying on a theory or argument

of lack of qualification.  The *de facto* trustee doctrine applies.[24]

Therefore, the Summary Judgment Motion is appropriately brought on this

basis and will be granted.  All claims that rest solely or are necessarily predicated

on Wisdom's argument of lack of trustee qualification will be dismissed.  While

this appears to include nearly every claim against Gugino, the Court will also

address several of Gugino's remaining defenses and arguments in order to make a

complete ruling.[25]

---

[23] (...continued)
allegations about Gugino's lack of qualification or authority at the time he was raising numerous
other issues regarding his performance.

[24]   In addition to the foregoing, *see also W.J. Servs., Inc. v. Commercial State Bank of El
Campo*, 990 F.2d 233 (5th Cir. 1993) (aligning with "numerous" courts holding that failure of a
de facto trustee to qualify does not invalidate  pre-qualification acts).

[25]   The format and structure of Wisdom's FAC makes it difficult to separate the many
claims and their factual bases.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 27

### B.    Immunity

Wisdom complains that Gugino's handling of the settlement and/or sale of the litigation that comprised property of the bankruptcy estate under § 541 was wrongful.  Part of this is based on the lack of filed bond issue discussed above.  He also argues, though couched in terms of other claims such as breach of contract, breach of fiduciary duty, negligence, and intentional and negligent infliction of emotional distress, that the manner in which Gugino approached and handled these matters was improper.  Whether that failure is cast as negligent or intentional in nature varies throughout the FAC.

Wisdom further alleges Gugino "did intentionally, falsely, with malice, make and publish a statement of fact that Plaintiff committed bankruptcy fraud, a criminal act.  The false published statement of a criminal act, made for no reason other than to intentionally cause harm and anguish to Plaintiff, caused Plaintiff substantial injury and damages."  FAC at 20.  Wisdom bases this argument on Gugino's Motion for Turnover/Inspection of Estate Property filed on January 5, 2012.  Case Doc. No. 78.

In the turnover/inspection motion, Gugino requested an order allowing him to inspect three vehicles to verify their condition and value and allowing him to access Wisdom's house and verify Wisdom's list of assets in schedules B and C, having "received a tip from a reliable source . . . that Debtor may have failed to

disclose potentially valuable assets." *Id.*[26]  Wisdom reads Gugino's motion as tantamount to an accusation that Wisdom committed bankruptcy fraud or a criminal offense, and thus characterizes the filing of the motion and the comments therein as "slander per se."[27]

Gugino generally defends all such arguments on a theory of immunity.

### 1.    Immunity generally

Trustees are charged with gathering and administering property of the estate.  *See* § 704(a)(1).  They are also required to investigate the financial affairs of the debtor.  *See* § 704(4).

When acting within "the scope of their authority and pursuant to court order," a bankruptcy trustee is entitled to "broad immunity from suit."  *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989) (citing *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390–91 (9th Cir. 1987)).  Although the trustee must still avoid "intentional or negligent violations of duties imposed upon him by law," *id.*, a court will hold a trustee immune for acts of mismanagement when the trustee acted on court authorization.  *Id.* at 824.

---

[26]   As noted, Wisdom opposed this request, and filed an affidavit in support of his opposition.  *See* Case Doc. Nos. 88, 89.  Gugino's motion was later withdrawn based on the previously described settlement.  Case Doc. No. 131.

[27]   The two theories by which a person may sue for defamation are libel and slander.  Restatement (Second) of Torts § 568 (1977).  Libel requires the "publication of defamatory matter by written or printed words," and slander requires "publication of defamatory matter by "spoken words, transitory gestures or by any form of communication" other than that which constitutes libel.  *Id.*  Although Wisdom characterizes his claim as "slander," the allegation of defamatory statements in Gugino's motion is better characterized as libel.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 29

The convergence of these two ideas creates a standard that a trustee must meet before immunity attaches. *Id.* First, the trustee "should obtain court approval and give notice to the debtor of a proposed action; [second,] [t]he trustee's disclosure to the court must be candid; [and third,] [t]he act must be within the trustee's official duties." *Id.* If all three requirements are met, then a trustee is immune from suit on those facts.

### 2.    Immunity applies to the settlement of the litigation

Wisdom claims Gugino acted wrongfully by settling the lawsuits owned by the estate. The settlement of lawsuits owned by the estate were well within Gugino's duties.[28] Indeed, all three lawsuits were administered through and pursuant to motion, notice and hearing, and Court order. Wisdom not only had notice of these proposed settlements, he objected and argued against each. The Court allowed him to be heard, and specifically allowed him an opportunity to outbid his prepetition litigation adversaries and thus retain the litigation. *See e.g.*, Case Doc. No. 80.[29]

---

[28]   A trustee may file a motion to settle a lawsuit in the pursuit of maximizing the value of the estate for the interest of creditors. Bankruptcy Rule 9019; *In re Arkoosh Produce, Inc.*, 2003 WL 25273746, *6 (Bankr. D. Idaho July 1, 2003). Wisdom argues the lawsuits should have been abandoned. It was well within Gugino's discretion, and on this record appropriate, to monetize the assets through compromise and sale. That the lawsuits as assets were "burdensome to the estate or . . . of inconsequential value and benefit to the estate" is belied by the proceeds obtained. Further, Wisdom's own requests for abandonment were withdrawn.

[29]   This approach adheres to the case law instructing that trustee's compromises of lawsuits with the debtor's adverse parties should be treated as a sale, and the Court should assure that optimal value is realized. *See Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282 (9th Cir. BAP 2005); *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey*

(continued...)

Gugino's administration of these lawsuits as assets of the estate meets the requirements of *Bennett* and immunity applies.  The Summary Judgment Motion will be granted dismissing these claims.

### 3.      Immunity applies to the request to inspect property

A chapter 7 trustee has a general statutory obligation to marshal and account for all property of the estate.  *See* 11 U.S.C. § 704.  It is well within a trustee's prerogative to inspect assets that have been disclosed and valued by a debtor in order to gauge whether they may bring more upon administration than debtor has estimated.  It is also unremarkable for a trustee to seek to inspect a debtor's real or personal property.  Gugino requested to do so here by motion and on notice to Wisdom.  Immunity applies.

Wisdom's contentions that the motion is slanderous per se grossly overreacts to the request actually made in this motion.  The motion does not accuse Wisdom of a crime or of fraud.  It simply states Gugino's request to view the premises was based on information received from a third party, alleges Wisdom "may have failed" to disclose property, and states Gugino wanted to "verify" the assets listed in the schedules.  This speaks to an inquiry well within a trustee's duties under § 704.

Wisdom views the motion as also suggesting a conclusion had been

---

[29] (...continued)
*Thompson Entm't Grp., Inc.)*, 292 B.R. 415 (9th Cir. BAP 2003).

reached, and an accusation made, that he committed bankruptcy fraud.[30]  On its

face, it does no such thing.  Though Gugino's references to "a tip from a reliable

source" and "potentially valuable assets" perhaps unnecessarily heightened the

debtor's reaction, it does not amount to slander per se or libel per se.  It is

axiomatic that a mere "failure to disclose" an asset is not *ipso facto* grounds for

denial of discharge under § 727(a).  All relevant subsections also require proof by

a preponderance of the evidence that a debtor had the "intent to hinder, delay, or

defraud" in concealing assets or "knowingly and fraudulently" made a false oath.

*See* §§ 727(a)(2), (a)(4)(A).[31]  It is even a further stretch to view the motion as

constituting an allegation of criminal activity under 18 U.S.C. § 152(1), which

speaks to a person who "knowingly and fraudulently conceals from a . . . trustee"

property of the estate, which contentions must be presented by the United States

Attorney and proven at trial beyond a reasonable doubt.

### C.    Privilege

Also in connection with the request to inspect property, Gugino asserts

privilege as a defense.  In Idaho "defamatory matter published in the due course of

---

[30]  Wisdom later found through discovery that Gugino learned about the potential undisclosed asset from two of Wisdom's creditors.  Adv. Doc. No. 137-3.  Wisdom takes issue with how Gugino made "no separate inquiry into the allegation that plaintiff committed bankruptcy fraud and simply proceeded to file the allegation without any support whatsoever," and states Gugino "is a bully and uses intimidation, coercion and threats to enact his authoritarian strategy and that is the only explanation that can be extracted from this bizarre action of his accusation that Plaintiff committed bankruptcy fraud."  Adv. Doc. No. 137.

[31]  *See e.g.*, *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 and 1200 (9th Cir. 2010).

a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsity" with few exceptions. *Weitz v. Green*, 230 P.3d 743, 754 (Idaho 2010) (citing *Richeson v. Kessler*, 255 P.2d 707, 709 (Idaho 1953)); *see also Kurz v. Zahn*, 2012 WL 4458128, *5 (D. Idaho Apr. 13, 2012) (concluding that statements made in the course of judicial proceedings cannot give rise to civil liability for defamation). Whether the matter was published in the due course of a judicial proceeding is a question of fact. *Swisher v. Collins*, 2008 WL 687305, *29 (D. Idaho March 10, 2008). "[T]he term 'judicial proceeding' is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *Kurz*, 2012 WL 4458128, at *5 (citing *Richeson*, 255 P.2d at 709).[32]

The motion and Gugino's statements therein were made in a judicial proceeding. Idaho law does not allow a remedy to Wisdom for Gugino's allegedly defamatory statements, even if all of the elements for defamation could be proven. In sum, the slander per se contentions fail in light of both immunity and privilege, even assuming the statements conceivably amounted to slander in the first place, which the Court finds they do not. The Summary Judgment Motion is well taken and Wisdom's claims against Gugino for slander per se must be dismissed.

---

[32] A proceeding includes "The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, Black's Law Dictionary (10th ed. 2014).

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 33

### D.    Preclusion

Gugino argues Wisdom is precluded from litigating claims related to the

liquidation of the life insurance policies in the FAC.

The Ninth Circuit has framed the two basic preclusion concepts—claim

preclusion and issue preclusion—as follows:

> Generally, the preclusive effect of a former adjudication is referred to
> as 'res judicata.' The doctrine of res judicata includes two distinct types
> of preclusion, claim preclusion and issue preclusion.  Claim preclusion
> treats a judgment, once rendered, as the full measure of relief to be
> accorded between the same parties on the same claim or cause of
> action. Claim preclusion prevents litigation of all grounds for, or
> defenses to, recovery that were previously available to the parties,
> regardless of whether they were asserted or determined in the prior
> proceeding.

*Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 802 (9th Cir. BAP 2006)

(citing *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321–22 (9th Cir. 1988)).  Issue

preclusion, in contrast, "[P]revents relitigation of all 'issues of fact or law that

were actually litigated and necessarily decided' in a prior proceeding . . . . The

issue must have been 'actually decided' after a 'full and fair opportunity' for

litigation."  *Id.* at 802 (citing *Robi*, 838 F.2d at 322).

### 1.    Preclusion doctrines apply notwithstanding the pending appeal regarding the TFR

In *Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988), the court stated that

"The established rule in the federal courts is that a final judgment retains all of its

res judicata consequences pending decision of the appeal . . . .  To deny preclusion

[while the original suit is on appeal] would lead to an absurd result:  Litigants

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 34

would be able to refile identical cases while appeals are pending, enmeshing their

opponents and the court system in tangles of duplicative litigation." *Id.* at 1367.[33]

Wisdom's appeal of the Court's prior judgment is therefore irrelevant as to that

judgment's preclusive effect.

## 2.    Issue preclusion

*Cogliano* holds that issue preclusion has six elements that must be satisfied

for it to apply.

> Five of the elements are described as 'threshold' requirements: (1)
> identical issue; (2) actually litigated in the former proceeding; (3)
> necessarily decided in the former proceeding; (4) former decision final
> and on the merits; and (5) party against whom preclusion is sought
> either the same, or in privity with, party in former proceeding.
>
>       The sixth element is a mandatory 'additional' inquiry into
> whether imposition of issue preclusion in the particular setting would
> be fair and consistent with sound public policy.

355 B.R. at 802–03 (citing *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817,

824–25 (9th Cir. BAP 2006)).

First, the issues decided by the bankruptcy court in response to Wisdom's

objection to the TFR are factually based on the liquidation of the life insurance

policies.  The court determined [Wisdom]'s "contentions that Trustee engaged in

fraud, misrepresentations, criminal conduct, and the like, are all founded upon

---

[33]  "'[I]t is clear that definitions of finality cannot automatically be carried over from
appeals cases to preclusion problems[.]' The policies served by the finality requirement are very
different in the two instances.  In the case of appellate jurisdiction, the requirement ensures that
appellate courts do not waste time reviewing cases whose outcomes might change. . . .  In the
case of preclusion, the finality requirement ensures that parties have a full opportunity to litigate a
claim before they are barred from asserting it again." *Id.* at 1367 n.1 (citations omitted).

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 35

[Wisdom]'s flawed premise concerning the propriety of Trustee's actions, they

lack merit and need not be addressed." Doc. No. 156 at 7. The Court ultimately

analyzed and ruled on three specific issues:

> (1) whether Trustee's decision to honor Debtor's exemption claim
> under Idaho Code § 11-605(10) on the largest insurance policy owned
> by Debtor was inappropriate; (2) whether a chapter 7 trustee has a duty
> to honor an exemption in property of the estate when the debtor fails
> to properly claim it; and (3) whether a claim to an exemption in an
> insurance policy under Idaho Code § 11-605(10) constitutes, in
> addition, an implied claim of exemption under Idaho Code § 11-605(9).

Doc. No 156 at 7. The Court rejected the argument that Gugino had acted

improperly on any of these issues, thus rejecting Wisdom's claims.

Several of the issues litigated in that motion are identical to claims made by

Wisdom in the FAC. Most specifically, the Court held Gugino did not act

inappropriately when ordering the liquidation of the policies, and Wisdom's

claims (fraud, misrepresentation, etc.), having been premised on the

inappropriateness of Gugino's actions, would be dismissed. This Decision easily

meets all of the issue preclusion elements.

Finally, it would be fair and consistent with public policy to preclude these

arguments from being made again because Wisdom made them during his

objection to the TFR, and he is currently pursuing an appeal on that Decision.

Insofar as Wisdom's claims are identical to the three issues already litigated in the

prior Decision, this Court should not relitigate them.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 36

3.    **Claim preclusion**

Although issue preclusion applies as to whether Gugino acted

inappropriately when 1) deciding to honor an exemption claim expressly made by

Wisdom under Idaho Code § 11-605(10), and 2) failing to honor an exemption in

property when Wisdom had failed to properly claim it, claim preclusion applies to

any arguments regarding the liquidation of the insurance policies that Wisdom

could have made in his objection to the TFR but did not.

This Court previously explained:

> "Under the doctrine of claim preclusion, a final judgment forecloses
> 'successive litigation of the very same claim, whether or not the
> relitigation of the claim raises the same issues as the earlier suit.'"
> *Taylor v. Sturgell*, 553 U.S. 880, 893, 128 S.Ct. 2161, 171 L.Ed.2d 155
> (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, 121
> S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

*Jensen-Edwards v. Nationstar Mortg., LLC, (In re Jensen-Edwards)*, 535 B.R.

336, 344 (Bankr. D. Idaho 2015) (citing *In re Canyon Mgmt., LLC*, 2015 WL

435049, *3 (Bankr. D. Idaho Feb. 2, 2015)).  Wisdom's objection was decided by

a federal bankruptcy court, so this Court applies Ninth Circuit precedent to

determine whether claim preclusion applies.[34]

A "claim" for purposes of claim preclusion is distinct from the Bankruptcy

Code's definition of "claim."  *Alary Corp. v. Sims (In re Associated Vintage Grp.,*

*Inc.)*, 283 B.R. 549, 556 (9th Cir. 2002) (citing § 101(5)).  A "claim" for the

---

[34]  On the other hand, federal courts will give state court judgments the preclusive effect
they would enjoy under the law of that state.  *Id.*

purposes of claim preclusion depends on:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 557–558. "Although the test cannot be applied mechanically and no criterion is dispositive, the 'most important' criterion is the 'transactional nucleus of facts.'" *Id.* at 558.

Wisdom's objection to the TFR rested almost exclusively on Gugino's actions associated with the liquidation of the life insurance policies. Several of the factual allegations are identical to the ones made here. In order to litigate Wisdom's claims regarding the handling of those life insurance policies, this Court would have to consider the same or similar evidence. The alleged rights infringed are identical, though the remedies Wisdom now seeks are different. And the "transactional nucleus of facts" are limited to Gugino's actions concerning the policies within an identical period of time. A decision on whether Gugino violated any sort of duty related to the liquidation of the policies would certainly undermine the TFR Decision. Therefore, the Court concludes claim preclusion applies to all the claims related to Gugino's conduct in liquidating the insurance policies.

### E.    Other contentions

The remaining claims in the FAC, to the extent they are not already

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 38

dismissed based on Gugino's authority, immunity, privilege and preclusion, should also be dismissed on the merits.

### 1.    Constructive fraud

Wisdom alleges Gugino's failure to disclose his EIN to NY Life when he requested the liquidation of the insurance policies constitutes "constructive fraud."[35]  "An action in constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty." *Wiggins v. Peachtree Settlement Funding (In re Wiggins)*, 273 B.R. 839 (Bankr. D. Idaho 2001) (citing *Hines v. Hines*, 934 P.2d 20, 26 (Idaho 1997)). "Constructive fraud comprises all acts, omissions and concealments involving a breach of a legal or equitable duty, trust or confidence and resulting in damage to another.  Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists." *Id.* at 877 (citing *Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App. 1991)).  "'[N]either actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.'" *Id.* (citing *McGhee v. McGhee*, 353 P.2d 760, 762 (Idaho 1960)).  The primary value of a constructive fraud claim is the ability to avoid the requirement of proving intent, which is required under an actual fraud claim, because that intent is inferred from the "relationship and the breach." *Country Cove Dev., Inc. v. May*, 150 P.3d 288,

---

[35]  Idaho distinguishes between constructive fraud and actual fraud.  *Doe v. Boy Scouts*, 356 P.3d 1049, ___ (Idaho 2015); *Gray v. Tri-Way Constr. Servs., Inc.*, 210 P.3d 63, ____ (Idaho 2009); *Mcghee v. Mcghee*, 82 Idaho 367 (1960).  Wisdom only alleges damages for constructive fraud.

294 (Idaho 2006).[36]

Here, Wisdom has failed to produce facts to establish a fiduciary

relationship or that Gugino owed him a fiduciary duty.  As the Idaho District

Court found in *Wisdom II*, "[t]he fiduciary duty argument is easily resolved

because the trustee does not owe a fiduciary duty to the debtor.  Rather, a Chapter

7 trustee is 'the 'legal representative' and 'fiduciary' *of the estate*.'" *Wisdom II*,

490 B.R. at 417 (citations omitted).  In addition, the omission Wisdom focuses on,

*i.e.*, Gugino's failure to provide an EIN to NY Life, was made to NY Life, not to

Wisdom.  Wisdom's FAC and his declaration do not establish how an omission

made to a third party may amount to constructive fraud as to Wisdom.

Therefore, the Summary Judgment Motion is well taken as to the

constructive fraud claim and it will be dismissed.

## 2.    Tortious interference with contract

Wisdom alleges Gugino had full knowledge of the existence of, and

intentionally interfered with, Wisdom's contracts and contractual relationships

with Stern and Pantera and NY Life, and this proximately caused Stern and

Pantera and NY Life to breach their contracts.  FAC at 12.

Tortious interference with contractual relationships requires a plaintiff to

prove "(a) the existence of a contract; (b) knowledge of the contract on the part of

---

[36]   In addition, the heightened pleading standard of Civil Rule 9(b), requiring allegations
of fraud and mistake to be stated with particularity, does not apply to constructive fraud.  *See
Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380 (D. Conn. 2007) (holding Civil Rule 9(b)
only applies to actual fraud).

the defendant; (c) intentional interference causing a breach of the contract; (d) injury to the plaintiff resulting from the breach." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 283–284 (1991). There is no doubt Wisdom had some sort of contract with his attorneys and with NY Life, and Gugino knew of those contractual relationships given counsel's appearance in the case and filing of a Rule 2016(b) disclosure[37] and the liquidation of the insurance policies. However, Wisdom's bare allegations that Gugino "intentionally interfered" with the contract with Stern and Pantera or with NY Life sets forth no facts supporting that element. Neither does any other fact stated in Wisdom's submissions, no matter how liberally construed.

Wisdom has not shown the existence of facts supporting all the elements for his claim for tortious interference with contract, upon which he would bear the burden of proof at trial. As such, it is appropriate to grant summary judgment to Gugino.

**CONCLUSION**

The Court finds all causes of action against Gugino in the FAC either fail on their merits under the undisputed facts or fail due to the existence of Gugino's authority, immunity, privilege and/or preclusion.

---

[37] *See* Case Doc. No. 2. While Gugino may have had general knowledge regarding the contractual relationship between Wisdom and his counsel, no contract was attached to the 2016(b) disclosure, and the record does not establish Gugino had knowledge of the terms of the contract between Wisdom and his former counsel prior to their Court-approved withdrawal in December 2011.

MEMORANDUM OF DECISION (GUGINO/LIBERTY MUTUAL) - 41

For the reasons stated, Gugino's Motion to Strike will be granted in part and denied in part.  The Summary Judgment Motion shall be granted in all regards and the FAC, as against Gugino, will be dismissed.  The Court shall enter orders accordingly.

DATED:  March 15, 2016

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE